ALBERT G. EDWARDS *et al.*, Appellants, *v.* MARY THOMAS *et al.*, Respondents.

May 16, 1876.

1. If one who has authority to sign and indorse mercantile paper for another, without authority makes or indorses paper for the accommodation of a third party, the purchaser of such paper will be held to inquiry as to the authority of the agent, if any circumstances are brought to his notice which would arouse the suspicion of a prudent man as to the authority of the agent.

2. The fact that the agent's name in such case appears as last indorser on the paper is a circumstance strongly indicating that the paper was made for his benefit, and the proceeds to go to him.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*John G. Chandler*, for appellants, cited : 2 Greenl. on Ev., secs. 60, 61; Story on Ag., secs. 45–50, 73, 140; Cobbs *v.* Lunt, 4 Greenl. 503; Dow *v.* Greene, 16 Barb. 72; Olcott *v.* Tioga R. R. Co., 27 N. Y. 546; Hoyt *v.* Thompson's Exr., 19 N. Y. 208, 219; Bank of United States *v.* Dandridge, 12 Wheat. 64, 70; Barbour *v.* Watts, 2 A. K. Marsh. 290; Pike *v.* Dyke, 2 Greenl. 213; Story *v.* Gowan, 18 Me. 174; Taylor *v.* Whiting, 2 B. Mon. 268; Phillips *v.* Greene, 5 T. B. Mon. 344; Orr *v.* Foote, 10 T. B. Mon. 387; 2 Ph. on Ev. (5th Am. ed.) 632–739, note 514; Exchange Bank *v.* Montieth, 17 Barb. 171; North River Bank *v.* Aymer, 3 Hill, 262, 272; Farmers & Mechanics' Bank *v.* Butchers & Drovers' Bank, 14 N. Y. 623; Griswold *v.* Haven, 25 N. Y. 595, 599, 602, 603; New York & New Haven R. R. Co. *v.* Schuyler, 34 N. Y. 30, 66; Smith *v.* Clark County, 54 Mo. 58, 77; 1 Pars. on Notes & Bills, 108; Bank of Bengal *v.* Maclead, 7 Moo. P. C. C. 35; Bank of Bengal *v.* Fagan, 7 Moo. P. C. C. 61; North River Bank *v.* Aymar, 3 Hill, 262, 266, 267; Mechanics' Bank *v.* New York Railroad, 13 N. Y. 623; *Id.*, 16 N. Y. 125, 131, 135, 136; Griswold *v.* Haven, 25 N. Y. 595; Exchange Bank *v.* Montieth, 26 N. Y. 505; State of Illinois *v.* Delafield, 2 Hill, 159;

Westfield Bank *v.* Cornen, 37 N. Y. 320 ; Bird *v.* Daggett, 97 Mass. 494 ; Madison & Indianapolis R. R. Co. *v.* Norwich Savings Soc., 14 Ind. 457 ; De Voss *v.* Richmond, 18 Gratt. 338 ; 2 Kent's Com. (12th ed.) 621, note ; Fairlie *v.* Hastings, 10 Ves. 123, 126, 127 ; 1 Ph. on Ev. (5th Am. ed.) 507, 508, 516 ; Perkins *v.* Burnet, 2 Root, 30 ; 1 Greenl. on Ev., secs. 27, 41, 208, 217 ; Graff *v.* R. S. R. R. Co., 31 Penn. 496 ; Kerr on Fraud, 111, 238, 239, 256 ; Wilson *v.* Fuller, 3 Q. B. 77 ; Goodman *v.* Simmons, 20 How. 343, 362–367 ; 1 Story's Eq., sec. 400, *a*; 1 Pars. on Notes & Bills, 260, 477, 502 ; Perkins *v.* Challis, 1 N. H. 254 ; Story on Prom. Notes, secs. 197, 310 ; Hamilton *v.* Marks, 52 Mo. 78–80 ; Horton *v.* Bayne, 52 Mo. 531 ; Lemoine *v.* Bank of North America, 1 C. L. J. 529 ; 1 Pars. on Con. 71, 253 ; Bank of Columbia *v.* Lawrence, 1 Pet. 578 ; Lewiston Falls Bank *v.* Leonard, 43 Me. 157 ; Sanderson *v.* Reinstadler, 31 Mo. 483 ; Bank of Columbia *v.* Lawrence, 1 Pet. 578 ; Williams *v.* United States Bank, 2 Pet. 96, 101 ; Edson *v.* Jacobs, 14 La. 494 ; Jones *v.* Mancker, 15 La. 51 ; Lord *v.* Appleton, 15 Me. 270 ; Commercial Bank *v.* Gove, 15 La. 113 ; Bank of United States *v.* Merle, 2 Rob. (La.) 117 ; Jacobs *v.* Turner, 2 La. An. 964 ; Hazard *v.* Treadwell, Stra. 506 ; Spencer *v.* Wilson, 4 Munf. 130 ; Story on Part., sec. 16 ; Pope *v.* Risley, 23 Mo. 186 ; Edw. on Bills (2d ed.), 612 ; Bank of Utica *v.* Phillips, 3 Wend. 408 ; Bank of Utica *v.* Davidson, 5 Wend. 587 ; Union Bank of Tennessee *v.* Govan, 10 Smed. & M. 334 ; Cocke *v.* Bank of Tennessee, 6 Humph. 51 ; Dabney *v.* Stidger, 4 Smed. & M. 749 ; Fourth Nat. Bank *v.* Henschen, 52 Mo. 207 ; Coll. on Part., secs. 195, 384, 601, 603 ; Greeley *v.* Wyeth, 10 N. H. 16 ; Barbour *v.* Watts, 2 A. K. Marsh. 290 ; Pike *v.* Dyke, 2 Greenl. 213 ; Story *v.* Gowan, 18 Me. 174 ; Phillips *v.* Green, 5 T. B. Mon. 344 ; Weidler *v.* Farmers' Bank of Lancaster, 11 Serg. & R. 134 ; Rowt's Admr. *v.* Kile's Admr., 1 Leigh, 216, 223, 224 ; 1 Ph. on Ev. (5th Am. ed.) 619, 620, 732, 736–738 ; Hayward *v.* National Ins. Co.,

52 Mo. 181; Mechanics' Bank *v.* Schaumberg, 38 Mo. 228.

*D. T. Jewett* and *Krum & Madill*, for respondents:

BAKEWELL, J., delivered the opinion of the court.

This is a suit brought by plaintiffs, copartners as Edwards, Mathews & Co., against the defendants as members of a copartnership known as the Sectional Dock Company, upon a negotiable promissory note for $3,000, dated March 19, 1873, payable, four months after date, to the order of the Sectional Dock Company, with interest from maturity at 10 per cent. per annum. The note is indorsed "Sectional Dock Co., by, Charles Drew, jr., Fin. Agnt., Charles Drew, jr.," and is made by Thomas P. Morse, and John D. Daggett.

The petition alleges that defendants, together with John D. Daggett, Ann Eliza Hartshorn, wife of Saunders W. Hartshorn, and Robert C. Rogers, executor of Patrick Rogers, were copartners as stated, Eliza Hartshorn's interest in the firm being a separate estate, and John D. Daggett being her trustee.

The necessary averments are made in the petition, and all the allegations in the petition, except copartnership of plaintiffs, are denied by the separate answers of defendants, which are verified by affidavit.

The case was tried by the court without a jury. Judgment was for defendants, and, the usual motions having been filed and overruled, the cause is brought here by appeal.

It appeared, on the trial, that, more than thirty years ago, a partnership in the business of repairing steamboats at St. Louis existed between John D. Daggett, Mary Thomas, Thos. T. Morse, Patrick Rogers, and Ann Eliza, wife of S. W. Hartshorn, whose trustee was Rowland Ellis, jr.; afterwards the partners agreed, in writing, that death should not work a destruction of the copartnership, but that the interest of any deceased partner should continue in his legal representative. In 1866 Thomas T. Morse died; his widow and administratrix, the defendant Sarah L. Morse, then, in writing, accepted and approved the partnership articles, and

the business continued as before—Mrs. Morse representing her husband's interest and drawing the dividends. In 1870 Patrick Rogers died at his residence in Ohio. His son and executor, Robert C. Rogers, as directed by the will, took charge of his father's interest in the company, participated in its management, and drew dividends, till he died in June, 1873, the relations of the partners continuing unchanged till that date. In June, 1873, Daniel G. Taylor was appointed and qualified as administrator, with the will annexed, of the estate of Patrick Rogers here, and John D. Daggett, Mrs. Morse, and Mrs. Thomas executed a relinquishment of their right to administer upon the partnership estate, describing themselves as sole resident survivors of the copartnership known as the Sectional Dry Dock Company of St. Louis. Taylor thereupon took charge as administrator of the partnership estate, on July 8, 1873. In 1863 John D. Daggett became trustee of Mrs. Hartshorn, and was her trustee when the note sued on was executed.

The court, by its rulings, decided that these facts constituted defendants partners as alleged in the petition.

In December, 1870, a partnership was formed, under the name of T. P. Morse & Co., between John D. Dagget, a member of the Sectional Dock Company, Thomas P. Morse, son of defendant Sarah L. Morse, and Charles Drew, jr., secretary of the Sectional Dock Company. This firm operated saw-mills in Illinois, and had an office on the northwest corner of Third and Olive streets, St. Louis. They failed in the summer of 1873. It is claimed by defendants that Charles Drew, jr., without authority from the Sectional Dock Company, made and indorsed mercantile paper for the accommodation of the firm of T. P. Morse & Co., and that the note sued on is one of the notes thus indorsed by him without authority.

It appeared in evidence that the business of the Sectional Dock Company was, for a great many years, managed by a general agent of the partners. In 1867 Charles Drew, jr., occupied this position, and continued to do so until about

two weeks before the maturity of the note sued on, when Taylor, as administrator, took entire control. The company had an office on Lesperance street, in the southern part of the city, where their books were kept and all their business was transacted. Drew also put up a sign of the company at the office of Morse & Co., corner of Third and Olive, a year or two before the maturity of this note, but it does not appear to have been, in any proper sense, the office of the company; and, two weeks before the maturity of this note, Taylor gave notice, in six daily papers of St. Louis, that he had sole charge of its affairs. He never used the office at the corner of Olive and Third, but at once removed the furniture to the regular office of the company, in the southern part of town; the signs, however, remained at the date of protest of the note.

As financial agent of the company, Drew was in the habit of indorsing and depositing, for collection and discounting, the business paper of the company; he kept its books, collected all bills, received and paid all moneys, kept bank accounts for it at two banks, and he alone could sign checks and indorse notes of the company. This he did, at first, as secretary, but for the last two years as "financial agent." The company received large amounts of notes for docking bills, and these were drawn in favor of the company, and were regularly indorsed by Drew as financial agent, and discounted by him, and the proceeds placed to the credit of the company.

The note sued on was made and indorsed for the accommodation of Morse & Co., and the proceeds were received by them alone.

The facts in regard to the purchase of the note sued on appear to be that, in December, 1872, Charles Drew, jr., put into the hands of Renick & Co., bill brokers, to get discounted, a note for $6,000, otherwise like the one in suit. This note was returned to Drew, with the suggestion that two notes for $3,000 each should be made in the place of it. Drew then pulled out a note, all signed as is the one in suit,

and filled it up for $3,000, and also another one signed in blank by all the parties to the note before us, except Daggett, and delivered the first one to Renick, who went back to plaintiffs with it the same day and got the money, and Drew, at the same time, promised to have the other note signed by Daggett next day, and did, in accordance with his promise, give the second note to Renick, who got the money for it, on the next day, from plaintiffs. Plaintiffs saw no one but Renick about the matter, and they and Renick say that Renick told them that the dock company had a good deal of paper to carry for customers, and wanted money. Renick also says that Drew told him the same thing, but Morse, who was present at the time, contradicts him in this respect.

Plaintiff Whittaker says he knew the firm of Morse & Co., and also the Sectional Dock Company; that the latter was considered a very solvent company, and that their indorsement was good. He also knew that Daggett was at the time incumbering his real estate, and was in the market for money. He also knew that Daggett was a member of both companies.

There is no evidence that Drew had any authority from defendants to indorse any paper, except the regular business paper taken from the customers of the company and discounted in the regular course of its business; nor is there any evidence that the defendants had any knowledge, or any reason to suspect, that Drew was using the name of the company on the back of any paper except that received by the company in payment, and discounted in the regular course of its business.

At the maturity of the note, payment was demanded of Drew and of Thomas C. Morse, at the office of Morse & Co., Third and Olive streets, and notice of demand and non-payment given to him at the same place. No notice was sent to Daniel G. Taylor, nor to the office of the company, on Lesperance street. There was evidence that the notary who protested the note had express notice of the

fact that Taylor had exclusive charge of the affairs of the
Sectional Dock Company, some days before the maturity of
the note, in a conversation with Taylor's book-keeper; but
the notary had no recollection of any such information
having been given him before the note matured, and says
he did not know the fact at the time.

The evidence is voluminous. The court refused five
instructions asked for plaintiffs, and gave twelve out of
fifteen instructions asked for defendants. Six instructions
asked for plaintiffs were refused. These instructions are
very lengthy, and we do not think it necessary to set them out.

The plaintiffs complain that the court erroneously ruled
as to the authority of the agent, and as to the right of
plaintiffs to rely on the agent's representations; as to
plaintiff's having notice of facts impeaching the validity of
the indorsement, and as to the sufficiency of notice of dis-
honor.

We do not propose to pass upon all the questions thus
presented. In our view of the case it will not be neces-
sary.

If the note in suit was discounted or sold for the benefit
and accommodation of Morse & Co. (as it unquestionably
was); if Drew had no authority from the Sectional Dock
Company to indorse its name on notes for the accom-
modation of Morse & Co. (and it nowhere appears that he
had any such authority), then, if there were circumstances
attending the making, indorsement, and sale of the note,
known to the purchasers, or their agent, which should have
put prudent men on inquiry as to Drew's authority to make
such indorsement, the defendants, in our opinion, were not
liable. *Hamilton* v. *Marks*, 52 Mo. 78.

The evidence shows that these circumstances existed, and
were known to Renick, the agent of plaintiffs in the pur-
chase of the note. The fact that the dock company was
perfectly solvent, and had steamboat paper which they
could use if they wanted to raise money, was known to
Whittaker and to Renick; they knew that Daggett was

incumbering his property, and was in the market for money. The names of the makers of the note were suggestive to persons acquainted with both firms that the paper was not for the dock company. Why should Daggett, embarrassed himself, be lending his name to the Sectional Dock Company, which was in excellent credit? The fact that the last indorser of the paper was Charles Drew, jr., was a strong indication that the paper was made for him, and the proceeds to go to his purposes. It is not pretended that his name could add any strength whatever to the paper. The law on this point was correctly declared by the court; and the evidence, on this view of the law, fully supported the finding for defendants.

The court below, by giving certain instructions asked for defendants, and refusing others asked for plaintiffs, in effect declared that service of notice of demand and non-payment by delivering it to Drew was not sufficient; that service at the office on Third and Olive streets was not sufficient; that service on Drew, at the office on Olive and Third, was bad; that service on Taylor was necessary; and that service on Drew, at the office on Third and Olive, was not service on the administrator.

It is not necessary, for purposes of this case, to decide that service on Taylor, the administrator, was necessary. We are of opinion that the court committed no error, under the evidence before it, in ruling service upon Drew, in the office on Olive street, to have been insufficient to hold defendants; and, as no other service is pretended, judgment must necessarily have been given for defendants on this ground alone. The office of the company was on Lesperance street; Drew had ceased to be its agent nearly three weeks before the maturity of the note, and Taylor had given public notice, for the same period of time, that he alone was authorized to attend to its affairs, and there was evidence that the notary had actual knowledge of these facts. Under these circumstances the court might very

properly declare that notice at Third and Olive was notice to no one interested—neither to the administrator of Rogers, who had charge of the partnership estate, nor to any one of the surviving partners.

For these reasons we think the judgment of the circuit court should be affirmed, and it is so ordered. The other judges concur.