### CHARLES N. WHITAKER *vs.* ALBERT F. BALLARD.

.Hampden. May 6, 1901. — May 21, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

A presiding judge is justified in refusing to give an instruction requested, if it assumes the existence of a fact which the jury might or might not find to be proved.

In maintaining a defence of payment to a suit by a collector of taxes for a tax, it was shown that the defendant paid the amount of the tax to the town treasurer who until recently had been authorized by the collector to receive such payments. *Held*, that the burden of proof was on the defendant to show that the authority remained unrevoked at the time of the payment, or that he paid in good faith relying on the previous existence of the authority and believing that it remained unrevoked, although, had there been no evidence of revocation, the defendant, to meet the requirement of proof on his part, could have relied on a presumption that the conditions remained unchanged.

In a suit by a collector of taxes for a tax, the defence relied upon was that the defendant paid the tax to the town treasurer who until recently had been authorized by the collector to receive such payments. The plaintiff was permitted to put in evidence the record of a former suit by the plaintiff against the defendant brought before the defendant made the payment to the treasurer, with evidence that the defendant knew that he could get that suit dismissed for

insufficient service.  *Held*, that the record of the former suit was competent in connection with other testimony, on the question whether the defendant paid in good faith believing that the treasurer was authorized to receive payment of the tax for the collector.

CONTRACT to recover the amount of the defendant's tax in the town of Hampden for the year 1896.  Writ in the Police Court of the city of Springfield, dated April 24, 1897.

The answer contained a general denial and a plea of payment.

At the trial on appeal in the Superior Court, before *Maynard*, J., it appeared, that the plaintiff was tax collector of the town of Hampden for the years 1895, 1896 and 1897; that during the years 1895 and 1896, and a portion of 1897, some of the taxpayers of that town had, as a matter of convenience to themselves, paid their taxes directly to John Q. Adams, the treasurer of the town ; that such payments were so made with the sanction of the plaintiff, and that the defendant's tax for 1895 was so paid ; that Adams receipted the bills so paid as previously made out and sent to the taxpayers by the plaintiff by signing the plaintiff's name as collector, " By J. Q. Adams, Treas.," on the face of the bill, and that the money so paid was credited to the plaintiff in settlements thereafter made by him with Adams. It further appeared in evidence, that on April 8, 1897, the plaintiff brought a suit against the defendant for the same cause of action as here, which was entered in the same Police Court, but on the day the present suit was brought the former suit was, on the defendant's motion, dismissed for insufficient service; and that while the first suit was pending the tax for 1896 was paid by the defendant to Adams.

The plaintiff testified that before bringing suit he asked the defendant several times to pay the tax declared on; that on the fifth day of the April in which both suits were brought, he told the defendant he would like his tax money, and the defendant replied, " Get it if you can," to which the plaintiff said, " I can get it, and you will come pretty near paying it to me " ; that on the same day the plaintiff called on Adams and notified him not to receive any more money from the defendant for taxes, and not to receipt in the plaintiff's name on any bill, as he was going to collect Ballard's tax, and that Adams replied, " All right."

On cross-examination, the plaintiff further testified that on the evening of April 12, and before the commencement of the present suit, Adams informed him that the defendant had paid him some money, and that afterwards he inquired of Adams what kind of a receipt he had given the defendant; that Adams informed him, and that the plaintiff took a copy of the receipt which he had given the defendant.

The plaintiff was permitted to introduce, against the defendant's objections and exception, records of the Police Court, showing that a suit was brought by the plaintiff against the defendant in that court by writ dated April 8, 1897, and returnable on the seventeenth day of the same month, to recover the same tax, and that, upon the defendant's motion, that action was dismissed on the twenty-fourth day of April on the ground of insufficient service, this evidence being introduced and admitted for no other purpose than as bearing upon the defendant's knowledge that, at the time the tax was paid by him, the authority of Adams to receipt bills had been revoked, and that he had no authority to receive taxes, and the jury was fully instructed that the record so offered had no other purpose and was not to be otherwise considered.

Adams was called by the defendant, and testified in substance that on the occasion of his first interview with the plaintiff, above referred to, the plaintiff did not instruct him not to receive any more taxes, but instructed him not to sign the plaintiff's name to any more tax bills; that Adams replied that he did not see how he could refuse to receive any more money, and that thereupon the plaintiff repeated the instructions not to sign his, the plaintiff's, name to any more tax bills.

On cross-examination, Adams testified that on the twelfth day of April the defendant came to him to pay his tax; that he informed the defendant that the plaintiff had instructed him not to receipt any more tax bills in his name; that the defendant then inquired if he could not take the money and give him a receipt in his own name, and Adams replied, " I don't know of any objection to that," and that he took the money and made out a receipt.     Adams further testified that within a few hours after the defendant had paid him his tax he informed the plaintiff of the payment, and the plaintiff took a

copy of the receipt which Adams had given to the defendant; that at the time the tax was paid he was not informed by the defendant, and had not been informed, that a suit was pending. for the recovery of the tax ; that had he known of the pendency of such suit he should not have received it; that the plaintiff refused to accept the money paid by the defendant. The wife of Adams and the defendant himself described the payment to Adams in substantially the same manner.

On cross-examination, the defendant testified that he said nothing to Adams regarding the suit then pending for the recovery of the tax, and that he knew there was some ground upon which he could get the then pending suit dismissed.

At the close of the evidence, the defendant requested the judge to instruct the jury that Adams's authority to receive payment having been established; the burden was upon the plaintiff to prove that the authority had been revoked, and that knowledge of its revocation had been brought home to the defendant prior to the payment on the twelfth day of April.

The judge, so far as material to the exceptions, instructed the jury as follows :

" This is a suit brought by the tax collector of the town of Hampden against a person who was assessed taxes which the collector says have not been paid. It was lawful for Mr. Whitaker to appoint Mr. Adams his agent, to receive the money, and if he did appoint him his agent, and while that agency lasted, anybody who paid the money to that agent under the authority of Mr. Whitaker, would make a good payment, but after the authority was revoked it would not be a good payment unless it had not come to the knowledge of the party paying, or there were such circumstances surrounding it that the party would be led to suppose that the authority had been revoked. There is no question but what Mr. Adams had authority from this collector to receive and receipt for taxes up to the 5th of April, and there is where the divergence comes. The plaintiff says that on the fifth day of April he told this treasurer that he must not take any more money for the taxes of this defendant. There has been introduced in this case the record of a former suit. That is, this tax collector, before this money was paid, brought a suit against Ballard, but upon the inspection of the

record it appears that the papers were served by a constable, and the constable had no authority to serve such papers, and when it came into court the defendant made a motion to have the suit dismissed, and the suit was dismissed, and upon the day it was dismissed the plaintiff started a new suit in place of it, which is the suit being tried. That affects nothing except as you may think it may have some bearing upon the question whether or not Ballard understood from that that Adams had no longer any authority to collect the taxes. That is one of the considerations which you have a right to take into account as bearing upon Ballard's knowledge whether or not Adams had any further right to take the taxes in place of Whitaker, whether or not he was not put upon his guard. Passing that, was Adams's authority to take the money revoked? Of course, if Adams's authority was not revoked, if Adams, when this money was paid, still had authority to receive it, and the authority had not been revoked by Whitaker, then it was a good payment of the taxes, and this suit cannot be maintained. It is agreed that up to the fifth day of April Adams had authority to receive taxes on Whitaker's account and give a receipt for them. If that authority never was revoked up to the time the money was paid, it would be a good payment. But the plaintiff contends that that authority was revoked. If you find that authority never was revoked, you need not proceed to consider the matter any further, because that would be a good payment and the defendant would not be liable. If you find that it was revoked, then the only remaining question is when Ballard turned that money over to Adams, did he turn it over in payment of his tax, and did he do it in good faith, with the understanding and belief that the authority of Adams to receive it still existed? As bearing upon that point, you will consider what had taken place between the parties, that is, the suit which had been brought before. That does not necessarily decide it, but you have a right to take it into account, the conversation which had taken place between Ballard and this tax collector, the tax collector testifying that he had told Ballard previously that he would have to pay the money to him, and Ballard's statement that Whitaker did not so inform him, and Adams's statement that he told Ballard he could not give a receipt. What had Ballard a right to understand from that?

" Taking all those things that took place between the parties, when Ballard went there to pay that money, did he, acting reasonably, honestly, understand and believe that the authority of Mr. Adams still existed to take that money? If, taking all those matters into consideration, you find that Ballard, acting reasonably, as a man of reason, honestly believed that Adams had the right to take that money in settlement, then he is entitled to a verdict, but if, on the other hand, you find that the authority was revoked, and that when he came with the money, acting as a man reasonably ought to act, he had reason to suppose that that authority had been revoked, then it would not be a good payment and Ballard would be liable for the amount of this tax, and interest from the date of the writ. In the first place, was the authority of Adams to receive the money revoked? If it was not revoked, then it was a good payment. If it was revoked, then the burden is upon the plaintiff to show this by a fair preponderance of the evidence. Does the evidence satisfy you that Ballard paid that money in good faith, having reason to believe that the authority of Adams to take that money still existed? If he did, it is a good defence. If not, the defence cannot prevail."

The defendant again requested the judge to instruct the jury, that Adams's authority to receive payment having been established, the burden was on the plaintiff to prove that the authority had been revoked, and that knowledge of its revocation had been brought home to the defendant prior to the payment on the twelfth day of April, 1897. Except as above, the judge refused so to instruct the jury. To the refusal to rule as requested and to the admission of the record of the former suit, the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*D. E. Webster,* for the defendant.

*C. L. Gardner & C. G. Gardner,* for the plaintiff.

KNOWLTON, J. The principal questions in this case arise on the defendant's answer of payment. Inasmuch as there was no contention that payment was made to the plaintiff personally, the burden of proof was on the defendant to show that the person to whom he made the payment was an agent of the plaintiff, duly authorized to receive it for him.

The defendant requested the court to instruct the jury that "Adams's authority to receive payment having been established, the burden was upon the plaintiff to prove that the authority had been revoked, and that knowledge of its revocation had been brought home to the defendant prior to the payment." So far as appears from the evidence stated in the bill of exceptions, the judge was not bound to assume that Adams's authority to receive payment of this particular tax was established. The evidence was of a general character which would well warrant a finding that at one time he had authority to receive such payments; but such a finding would be only a matter of inference and not of uncontrovertible proof as to this particular tax. So far as appears it was a sufficient reason for refusing to give the instruction requested that it assumed the existence of a fact which the jury might or might not find to be proved. But if it had been proved, the burden of proof was on the defendant to show that the authority remained unrevoked at the time of the payment, or that he paid in good faith, relying on the previous existence of the authority, and believing that it remained unrevoked. In the absence of evidence of revocation he might have relied on a presumption that the conditions remain unchanged, and as a matter of proper inference a verdict might have been returned in his favor. But such a verdict would have been rendered, not because the burden of proof was on the plaintiff, but because in the absence of further evidence, proof of the antecedent fact met the requirement of proof by the defendant. The instruction given, that the burden was on the plaintiff to prove a revocation of the authority, was therefore, too favorable to the defendant.

The uncontradicted evidence shows that the authority, if it ever included this tax, had been revoked. The defendant's own admission that he knew that a suit had been brought against him by the plaintiff for the tax before he paid it, and that he knew there was a ground on which he could get that suit dismissed, and that Adams told him he could not sign the plaintiff's name to a receipt for payment, as he formerly had been accustomed to do, coupled with Adams's testimony that he told the defendant that the plaintiff had instructed him not to receipt any more tax bills in his name, shows that the defendant knew

that it had been revoked. After the revocation of such authority, if the defendant made a payment, it is too plain for discussion that the burden of proof would be on him to show that he paid in good faith, relying on the former authority and in ignorance of the revocation.

The evidence of the former suit against the defendant to recover this tax, with the defendant's knowledge of a reason for dismissing it, was competent, in connection with the other testimony, on the question whether the defendant paid in good faith, believing that Adams was authorized to receive payment for the plaintiff.

*Exceptions overruled.*