## HAMILTON NATIONAL BANK *v.* NYE.

[No. 5,557.   Filed March 14, 1906.]

1. PLEADING. — *Answer.* — *Verification.* — *Bills and Notes.* — *Indorsements.*—*Unauthorized.*—An answer, in an action by the indorsee of a bank check, that the plaintiff derived title through an unauthorized indorsement by one claiming to be the agent of the payee, is sufficient and needs no verification.   p. 465.

2. SAME.—*Facts.*—*Conclusions.*—A pleading setting out the facts is not rendered bad by surplusage consisting of the legal conclusions from such facts.   p. 466.

3. BILLS AND NOTES.—*Checks.*—*Title.*—*Unauthorized Indorsement.*—The unauthorized indorsement of a bank check confers no title on the indorsee.   p. 466.

4. SAME.—*Checks.*—*Title.*—*Unauthorized Indorsement.*—*Subsequent Indorsees.*—Subsequent indorsees have no title as against the drawer of a check, where the first indorsement was unauthorized.   p. 466.

5. SAME.—*Negotiable.*—*Title.*—*Innocent Subsequent Indorsees.*—*Equities.*—An innocent subsequent indorsee ordinarily takes negotiable paper free from the equities between the original parties or prior indorsers.   p. 467.

6. PRINCIPAL AND AGENT. — *Salesman.* — *Authority to Indorse Checks.*—An ordinary traveling salesman has no implied authority to indorse checks payable to his principal.   p. 467.

7. BILLS AND NOTES.—*Checks.*—*Unauthorized Indorsement.*—*Innocent Indorsees.*—*Loss.*—The drawer of a check does not put it in the power of a third party to do a wrong, within the meaning of the law, when he draws a check to the payee and such third party without authority indorses the payee's name thereon and such check passes in due course to a subsequent indorsee.   p. 468.

From Kosciusko Circuit Court; *Edgar Haymond,* Special Judge.

Action by the Hamilton National Bank against Edward E. Nye.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

*James S. Dodge, Jr.,* and *Bertram Shane,* for appellant.

*Samuel Parker, John H. Brubaker* and *Walter Brubaker,* for appellee.

ROBINSON, J.—Action by appellant upon a bank check. The complaint avers that appellee executed his check upon the Lake City Bank, payable to "Walsh, Boyle & Co., or order," and delivered the check to the payee; that afterward the check, for a valuable consideration, was indorsed by the payee to the Indiana National Bank, which bank, for a valuable consideration, indorsed the check to appellant; that afterward appellant presented the check to the Lake City Bank for payment, which was refused, of which fact appellee had notice; and that the same was duly protested.

Appellee filed a verified answer admitting the execution of the check, but alleges he should not be held liable on the check, for the reason that since this action was commenced he paid the amount of the check to Walsh, Boyle & Co.; that at the time the check was drawn he was indebted to that firm to the amount of the check for goods sold by the firm to him, through their traveling salesman Underhill; that when the check was drawn it was delivered to Underhill, who, instead of sending it to the firm, as was his duty, took the same to the Indiana National Bank and wrote the words "Walsh, Boyle & Co." across the back thereof, which bank forwarded the check to appellant, which was its Chicago correspondent; that the check was not indorsed by the firm, but was indorsed with the firm's name by Underhill; that he had no authority or right so to indorse the same; and that the firm did not in any manner ratify the indorsement. It was not necessary to verify the answer. It is not a plea of *non est factum.* It does not deny the execution or delivery of the check. The effect of the answer is that it denies the appellant's right to sue on the check for the reason that Walsh, Boyle & Co. are the real owners of the check, the title never having passed to appellant. Whether the verification that was attempted was sufficient is not material.

The facts pleaded in the answer, if true, are a bar to the action. See *Bostwick* v. *Bryant* (1888), 113 Ind. 448.

It is urged against the answer that it pleads appellee's conclusion as to what he "was bound to do in law." However, this conclusion neither adds anything to, nor 2. takes anything from, the pleading, because the facts from which this conclusion is drawn are pleaded. The facts pleaded speak for themselves, and it was unnecessary for appellee to state what the law upon those facts required or did not require him to do. The conclusion is surplusage.

The maker of the check did not undertake to pay the amount of the check to any person other than Walsh, Boyle & Co., or to some person to whom this firm should 3. order it to be paid. When the check was drawn and delivered to the firm's agent, the title was in the firm, and remained in the firm until by some act of the firm, or its authorized agent, it passed to another. An indorsement by any other person could have no effect on the firm's title. Placing the firm's name on the back of the check and delivering it to a third person would divest the firm's title and vest the title in such third person. If the agent, without the firm's knowledge, had delivered the check without any indorsement to a third. person, such delivery could not affect the firm's title, but such an act could have no greater or less effect than the delivery of the check with an unauthorized indorsement.

If appellant has any title to the check, it derived it through the Indiana National Bank. But the unauthorized indorsement and delivery of the check had no 4. effect on the payee's title and could not therefore convey anything, as against the payee, to that bank. We have nothing to do with the respective rights of the two banks as against each other. "The purchase of the check upon a forged or unauthorized indorsement conferred no title, and in contemplation of law the check remained untransferred."

*Indiana Nat. Bank* v. *Holtsclaw* (1884), 98 Ind. 85.
See, also, *Graves* v. *American Exchange Bank* (1858),
17 N. Y. 205; *Armstrong* v. *National Bank* (1889), 46
Ohio St. 512, 22 N. E. 866, 15 Am. St. 655, 6 L. R. A.
625; *Levy & Salomon* v. *Bank of America* (1872), 24 La.
Ann. 220, 13 Am. Rep. 124; *Seventh Nat. Bank* v. *Cook*
(1873), 73 Pa. St. 483, 13 Am. Rep. 751; *Welsh* v. *German American Bank* (1878), 73 N. Y. 424, 29 Am. Rep.
175; *National Park Bank* v. *Seaboard Bank* (1889), 114
N. Y. 28, 20 N. E. 632, 11 Am. St. 612, note; *Baldwin* v.
*Shutter* (1882), 82 Ind. 560; *Citizens State Bank* v.
*Adams* (1883), 91 Ind. 280; *Adams* v. *Citizens State
Bank* (1880), 70 Ind. 89; *Elliott* v. *Armstrong* (1829),
2 Blackf. 198, 211.

It is quite true it is possible that a remote indorsee might
acquire a better title to a negotiable instrument, so far as
available equities and defenses between the parties
are concerned, than some prior indorser through
whom the indorsee's title came. But the unauthorized indorsement had no effect on the payee's title
to the check. The delivery of the check with the unauthorized indorsement was in effect the delivery of the check
without any indorsement, and in the latter case it is clear
that the check in the hands of any one, other than the payee,
would not be negotiable paper according to the custom of
merchants.

The agent Underhill was engaged in selling goods, and
was probably authorized as such agent to collect money for
goods sold. But he had no implied authority to
bind his principal by the separate, original and independent contract of indorsement. In Tiedeman,
Commercial Paper, §77, the author says: "And the execution and negotiation of commercial paper are considered
by the commercial world so liable to the infliction of injury on the principals, if this authority is given to agents,
—the general custom being to reserve this power for per-

sonal exercise,—that the presumption of the law is more strongly opposed to an implied authority to execute and negotiate commercial paper than to do anything else." See *Knowlton* v. *School City of Logansport* (1881), 75 Ind. 103; *Robinson* v. *Anderson* (1886), 106 Ind. 152; *Runyon* v. *Snell* (1888), 116 Ind. 164; *Blackwell* v. *Ketcham* (1876), 53 Ind. 184; *Indianapolis Mfg., etc., Union* v. *Cleveland, etc., R. Co.* (1873), 45 Ind. 281; *Reitz* v. *Martin* (1859), 12 Ind. 306, 74 Am. Dec. 215; *Miller* v. *Edmonston* (1846), 8 Blackf. 291; *Smith* v. *Gibson* (1843), 6 Blackf. 369; *Kirk* v. *Hiatt* (1850), 2 Ind. 322; *Corning* v. *Strong* (1849), 1 Ind. 329; *Graham* v. *United States Sav. Inst.* (1870), 46 Mo. 186.

It is a general rule, applicable in cases of agency, that where one of two innocent parties must suffer through the fraud of a third party, the loss should fall upon 7. him who put it in the power of such third person to do the wrong. But this rule is not applicable in this case, for the same reason that would prevent its application if the Indiana National Bank had brought this suit, instead of appellant. When the Indiana bank had the check indorsed to it, it was bound to know whether it was properly indorsed, and it is well settled by the above authoritites that it acquired no title to the check through the unauthorized indorsement. The wrong against appellant was the statement by the Indiana bank, through its indorsement to appellant, that it was the rightful holder of the check, and that the indorsement to it was a valid indorsement. The complaint shows that the check was indorsed to the Indiana bank, and then indorsed by that bank to appellant. The evidence supports the answer.

Judgment affirmed.