DISPATCH PRINTING COMPANY v. NATIONAL BANK OF COMMERCE.[1]

January 14, 1910.

Nos. 16,150—(7).

**Payment of Check to Unauthorized Agent — Estoppel of Principal — Payment Through Clearing House.**

Where a bank pays a check drawn upon another bank to an agent of the payee therein named, who is not authorized to receive the money, but as to the paying bank the agent's principal is estopped from denying the authority of the agent, by reason of which the paying bank acquires a valid bona fide title to the check, its title passes to the drawee bank upon its payment of the check through the clearing house, though the facts justifying the paying bank were not known to the officers of the drawee bank.

**Express Authority of Agent.**

Express authority of an agent is that which the principal directly grants to him, and this includes by implication, whether the agency be general or special, all such powers as are necessary and proper as a means of effectuating the purposes for which the agency was created.

**Apparent Authority of Agent.**

The apparent authority of an agent is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing.

**Agency by Estoppel.**

Agency or authority by estoppel arises in those cases where the principal by his culpable negligence permits his agent by an unquestioned course of dealing to exercise powers not granted to him, in consequence of which third persons dealing with the agent are in good faith justified in believing him to possess the powers exercised.

**Authority of Agent — Burden of Proof.**

The burden of proving the extent of the authority of an agent is upon the person alleging the fact.

**Lack of Authority — Burden of Proof.**

The trial court erred in charging the jury that the burden of proving want of authority was upon the principal.

[1] Reported in 124 N. W. 236.

**Not a Question for Jury.**

No evidence appearing in the record that plaintiff's agent had express authority to indorse its checks and receive the money thereon, it is *held* that the court erred in submitting to the jury the question of such authority.

**Authority of Agent to Indorse Checks.**

An agent for the purpose of soliciting advertising and collecting accounts due therefor has no implied authority to indorse checks payable to his principal, though delivered to him in payment of accounts in his hands for collection.

Action in the district court for Hennepin county to recover $3,-246.88, the total amount of twenty-two checks which were drawn on defendant to the order of the Dispatch Printing Company and were paid by defendant.

The complaint alleged that M. A. Sturm was a solicitor of advertising for plaintiff; that the drawer of each check made it payable to the plaintiff and delivered it to Sturm to be delivered to plaintiff; that Sturm wrongfully and without any authority so to do indorsed it as follows: "The Dispatch Ptg. Co." "St. Paul Dispatch, Minneapolis Dept., M. A. Sturm, Mgr." "Pay to the order of Germania Bank, Minneapolis, Minn., M. A. Sturm, Trustee;" that defendant paid the check for the sole benefit of Sturm, charged the same to the account of the drawer and marked the check "Paid;" that each of such indorsements was made without the knowledge or consent of plaintiff, and the deposit of the check in bank to the credit of Sturm, whether individually or as trustee, was without the authority or consent of plaintiff. The answer alleged that Sturm, acting in his capacity as agent and manager of plaintiff corporation in Minneapolis, with full knowledge and consent of plaintiff was engaged in soliciting advertising and collecting moneys becoming due upon its accounts; that a part of the funds so collected was in the form of checks of advertisers in the St. Paul Dispatch and a part was in cash; that it was the practice of Sturm to deposit the funds so collected in the Germania Bank in the name of M. A. Sturm, trustee, which fact was well known to plaintiff, and in carrying on the business it was his custom to indorse the checks payable to plaintiff, which fact was well known to plaintiff, its officers and business manager, who in

divers ways approved and assented to his conduct; that by reason thereof defendant was induced to honor and pay the checks in the usual course of business, when so indorsed by Sturm, by the Germania Bank, and the clearing house of Minneapolis, and did this with full knowledge and consent of plaintiff, its officers and business manager.

The case was tried before Frederick V. Brown, J., and a jury which returned a verdict in favor of defendant. Plaintiff's motion for judgment notwithstanding the verdict or a new trial was denied. From the judgment entered pursuant to the verdict, plaintiff appealed. Reversed and new trial granted.

*Durment & Moore,* for appellant.

*Chas. G. Laybourn,* for respondent.

A general agency may be inferred from facts and circumstances; from habit and course of dealing. Lyell v. Sanbourn, 2 Mich. 109, 114; 2 Greenleaf, Ev. §§ 64, 65; Story, Agency, § 55; 2 Kent, Com., §§ 614, 615; Wilcox v. Chicago, M. & St. P. R. Co., 24 Minn. 269; Graves v. Horton, 38 Minn. 66; Gimon v. Terrell, 38 Ala. 208; Reynolds v. Collins, 78 Ala. 94; Bradford v. Barclay, 39 Ala. 33; Proctor v. Tows, 115 Ill. 139; Friedlander v. Cornell, 45 Tex. 585; Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224; Best v. Krey, 83 Minn. 32. In such cases agency may be presumed. Fowlds v. Evans, 52 Minn. 551; Neibles v. Minneapolis & St. L. Ry. Co., 37 Minn. 151. And the principal will be estopped from asserting to the contrary against one relying on the agent's authority. Tice v. Russell, 43 Minn. 66; American Graphic Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., 44 Minn. 93; J. I. Case Threshing Machine Co. v. McKinnon, 82 Minn. 75; Scanlon-Gipson Lumber Co. v. Germania Bank, 90 Minn. 478.

The culpable negligence of the plaintiff in failing to so manage its business as to avoid the losses resulting from Sturm's acts constitutes an estoppel. Johnson v. Milwaukee, 46 Neb. 480; Wheeler v. Benton, 67 Minn. 293; Kasson v. Noltner, 43 Wis. 646; Lorton v. Russell, 27 Neb. 372; Johnson v. Donnell, 90 N. Y. 1; Webster v. Wray, 17 Neb. 579; Fowlds v. Evans, supra; Rockford v. Wilcox, 66 Ill. 417; Reynolds v. Collins, supra; Neibles v. Minneapolis &

St. L. Ry. Co., supra; Columbia Mill Co. v. National Bank of Commerce, supra.

BROWN, J.

Plaintiff, Dispatch Printing Company, is a corporation organized under the laws of this state, doing business at St. Paul and publisher of the St. Paul Dispatch. In 1901 it employed one Sturm and placed him in charge of its advertising department at Minneapolis, with authority to solicit advertising from the merchants of that city and to collect and remit to plaintiff all accounts due therefor. He was paid for his services a commission of fifteen per cent. of all amounts received for advertising secured by him. From the date of his employment in 1901 until 1906, when he died, he made his headquarters at Minneapolis, and advertised as "M. A. Sturm, Minneapolis Manager, St. Paul Dispatch." He kept no books of account with advertisers, who became such at his solicitation, nor did he render bills to them. He transmitted to plaintiff by mail copies of all advertising secured, and all accounts in reference thereto were kept by clerks upon the books of the company at the St. Paul office. Statements of account were there made out and sent to Sturm for collection and remittance to the home office.

While he was given full authority in the matter of securing advertising and making collection of bills sent him, his authority did not extend beyond acts of that kind. Though he was permitted to advertise as manager of the Minneapolis department of plaintiff, he was not a general agent with unlimited power and authority, but was expressly confined within the limits stated.

Many of the accounts transmitted to him for collection were paid by the debtors with checks payable to plaintiff by name and drawn upon Minneapolis banks in which they carried a deposit. Most of these checks were forwarded direct to plaintiff by Sturm, but some of them he indorsed with plaintiff's name as manager, and deposited them in Minneapolis banks to his own credit. From October, 1902, until January 20, 1903, he kept an account with the Hennepin County Savings Bank under the name of "St. Paul Dispatch, Minneapolis Dept., M. A. Sturm, Manager." And he undoubtedly deposit-

ed therein moneys paid him on advertising accounts, and it appears that he drew upon this account at least one check payable to plaintiff for $1,546.50, and transmitted the same by mail to plaintiff at St. Paul, where it was received and applied in payment of advertising accounts. Just what proportion of accounts were paid Sturm by check does not appear, but it does appear that authority to indorse checks delivered to him and payable to plaintiff was expressly withheld from him.

In February, 1904, he opened an account with the Germania Bank of Minneapolis in the name of "M. A. Sturm," but at the time informed the officers of that bank that he was the Minneapolis manager of the St. Paul Dispatch. In January, 1905, he closed this account by transferring a balance then remaining to his credit to an account in the name of "M. A. Sturm, Trustee." From and after the opening of this account he received a large number of checks in payment of advertising, payable to plaintiff by name, and upon a number of them, some twenty-five, he indorsed,

"The Dispatch Ptg. Co."
"St. Paul Dispatch
"Minneapolis Dept.
" M. A. Sturm, Mgr."

and

"Pay to the order of GERMANIA BANK,
"Minneapolis, Minn.
"M. A. Sturm,
"Trustee,"

depositing the amount of each in the Germania Bank to his own credit as "Trustee."

All the checks involved in this action were drawn upon the defendant, National Bank of Commerce, and were in the due course of business paid by it through the clearing house. All other checks received by Sturm in payment for advertising were transmitted direct to plaintiff at its home office in St. Paul. Those involved in this action and converted to the use of Sturm in the manner stated aggregated $3,246.88. Some time before the commencement of this action, plaintiff discovered the fraudulent conduct of its agent and

the misappropriation of funds collected by him, and brought this action to recover the amount, upon the ground that the agent had no authority to indorse its name upon the checks, or to collect or receive the money thereon, and that the payment of the checks by defendant to the Germania Bank was unauthorized and did not discharge its liability to plaintiff.

The defense was: (1) That Sturm had authority in fact to indorse checks received by him as plaintiff's manager, and to collect and receive the money thereon; (2) that if no such authority had in fact been conferred upon Sturm, plaintiff, either knowingly or through culpable negligence, permitted him to so conduct its affairs that the Germania Bank was justified in concluding that he had such authority; and (3) that the Germania Bank, having paid the checks in good faith and in reliance upon the apparent authority of Sturm, acquired a perfect title thereto, which passed to defendant, the drawee of the same, as they came to it through the clearing house.

At the conclusion of the trial, both parties requested an instructed verdict. The requests were refused, the issues in the case submitted to the jury, and a verdict returned for defendant. Plaintiff appealed from an order denying its alternative motion for judgment or for a new trial. The assignments of error present for consideration several important questions in agency, which we dispose of in the order of their appearance in the record.

1. The checks upon which the action is founded were drawn upon defendant, National Bank of Commerce, payable to the Dispatch Printing Company, and were cashed or paid to Sturm by the Germania Bank in the manner already outlined. The question whether Sturm had authority, express, implied or apparent, to indorse the checks, as agent of plaintiff, was one of the principal issues litigated on the trial; it being asserted in defense that he had such authority, and that the Germania Bank had the right to rely thereon in paying the checks, and therefore become a bona fide purchaser thereof. It was not claimed that defendant, the drawee of the checks, had any knowledge of or acted upon any supposed authority, real or apparent, of Sturm in paying the checks to the Germania Bank through the clearing house; but its defense to the action was predi-

cated upon the claim that, as the Germania Bank acquired good title to the checks as against plaintiff, its title passed to defendant and fully protects it from further liability. Upon this branch of the case the court below charged the jury, as follows:

"If the Germania Bank acquired a good title to the checks, under the rules of law, as I have stated them to you in connection with this branch of the case, then it also acquired a good title to transfer the checks to the defendant bank, or to receive pay thereon and deliver up the checks to that bank, and the defendant bank is protected by the rights thus acquired by the Germania Bank."

This instruction is assigned as error. The trial court was entirely right in this view of the law. Bank checks are negotiable instruments, and the rules and principles of law applicable to commercial paper govern and control the rights and liabilities of purchasers and holders thereof. If Sturm had no authority, express or implied, to indorse the checks, and plaintiff was not estopped from denying his authority to so act, within the principle of law presently to be adverted to, his indorsement thereof amounted to forgery, and the Germania Bank took no valid title to them. But if he had such authority, or for any reason plaintiff is estopped from denying it, as to the Germania Bank, then that bank must be held a bona fide purchaser of the checks, and its title, valid in law, passed to defendant.

The rule generally applicable to commercial paper is that a purchaser of such instruments from a bona fide holder acquires a valid title thereto, even though he have at the time notice of defenses which might have been available against the original payee. The theory of the law is that a bona fide holder of such paper may deal with it on the basis of his own valid title, and transfer that title and all appurtenant rights to whomsoever may purchase. 6 Current Law, 789; Robinson v. Smith, 62 Minn. 62, 64 N. W. 90; note to Green v. Wilkie (Iowa), 36 L. R. A. 434, 441; Prentiss v. Strand, 116 Wis. 647, 93 N. W. 816; Black v. First National, 96 Md. 399, 54 Atl. 88; Symonds v. Riley, 188 Mass. 470, 74 N. E. 926.

As applied to this particular case, the question is whether the Germania Bank could have recovered upon the checks in an action against the drawee and the plaintiff. It seems quite clear, if a bona

fide holder, that it could.  Or, if the Germania Bank had brought an action against defendant alone, it is equally clear that the Dispatch Company could have been brought in as a party to the action at the instance of defendant and compelled to litigate the rights and title of the Germania Bank.  So that it necessarily follows that if the Germania Bank acquired a valid title to the checks, and was a bona fide holder thereof, defendant may assert that title as a defense in this action—may assert the same defense which that bank could interpose against the Dispatch Company.

2.  Error is also assigned to those portions of the instructions submitting to the jury the question of Sturm's actual or apparent authority to indorse the name of plaintiff upon the checks and to receive the money thereon as its agent.  The court, as introductory to its general instructions in this respect, stated to the jury that the burden was upon plaintiff to prove by a fair preponderance of the evidence that Sturm had no actual authority to do the thing complained of.  We are of opinion that the court erred in this instruction.

It is elementary that the power of an agent to bind his principal rests entirely upon the authority conferred upon him.  Without such authority, for which the principal himself becomes, by act or conduct, responsible, the agent can bind himself only.  "Every person, therefore, who undertakes to deal with an alleged agent, is put upon inquiry, and must discover at his peril that such pretended agent has authority, that it is in its nature and extent sufficient to permit him to do the proposed act, and that its source can be traced to the will of the alleged principal."  31 Cyc. 1322; Ermentrout v. Girard F. & M. Ins. Co., 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346, 56 Am. St. 481.  At the time the Germania Bank received the checks from Sturm it had knowledge that he was the agent of plaintiff, the checks were payable to plaintiff, and were indorsed by Sturm as its manager.  He was not a general agent, with unlimited or unrestricted power, but instead was clothed with special or limited authority only, that of soliciting advertising and collecting accounts sent him by the home office of plaintiff.  This did not invest him by implication with power or authority to indorse or ne-

gotiate for plaintiff commercial paper, and the bank was under special duty to make inquiry respecting his authority to indorse these checks. Wm. Deering & Co. v. Kelso, 74 Minn. 41, 76 N. W. 792, 73 Am. St. 324; Jackson v. Commercial, 199 Ill. 151, 65 N. E. 136, 59 L. R. A. 657, 93 Am. St. 113; Hamilton v. Nye, 37 Ind. App. 464, 77 N. E. 295, 117 Am. St. 333; Seattle v. Packard, 43 Wash. 527, 86 Pac. 845, 117 Am. St. 1064; New York v. First National, 39 Mich. 644; Edwards v. Thomas, 2 Mo. App. 282. If the bank relied upon actual authority in Sturm to so act, the burden was upon it to establish the fact. 31 Cyc. 1643; Nicholson v. Pease, 61 Vt. 534, 17 Atl. 720; Whitaker v. Ballard, 178 Mass. 584, 60 N. E. 379; Bank v. Tuck, 101 Ga. 104, 28 S. E. 168; 1 Clark & Skyles, Agency, 506. This rule is supported by the uniform trend of authorities (2 Enc. L. & P. 831), and was in no way changed in the case at bar by the fact that the plaintiff in its case in chief offered evidence of the general authority and employment of Sturm.

The court was in error, therefore, in giving this instruction, and that it was prejudicial will admit of no discussion. It left the impression upon the minds of the jury that actual authority existed which plaintiff was required to overcome by a fair preponderance of the evidence, and nothing was said later along in the instructions to overcome the impression so created.

3. We are also of opinion that the court erred in submitting to the jury the question whether Sturm had been expressly authorized to indorse checks, and in refusing to charge, as requested by plaintiff, that the evidence disclosed no such authority. Express authority, as involved in the law of principal and agent, is that which the principal directly grants to the agent, and this includes, by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. It does not include apparent authority which arises from a conscious permission by the principal of acts beyond those expressly granted, but only those which he affirmatively extends to the agent.

And though it is true that authority of this character may be shown by circumstantial evidence, precisely as other controverted

questions may be solved, we discover no evidence in the record, cir-·cumstantial or otherwise, to justify the conclusion that Sturm was expressly authorized to indorse checks received by him which were payable to the plaintiff in name.   The fact that he did so for a considerable period of time does not prove, in any proper view, that he was directly so authorized, for no agent can by his own act create evidence of authority to do a particular thing.   The fact that he had been in the habit of indorsing such checks, if known to plaintiff, might tend to establish apparent authority, but would be of no other or greater force or effect.   The only evidence in the record directly on the point of express authority is to the effect that this right was expressly withheld from Sturm, and that he was explicitly directed and required to transmit to the Dispatch Company all checks received by him in payment of accounts rendered.   We discover nothing in the record to overcome this explicit proof.

The court, therefore, erred in not taking this feature of the case from the jury.   The fact that it was submitted to them in connection with the rule as to the burden of proof laid down by the court emphasizes the nature of the error.

4.  Plaintiff further contends that the trial court erred in submitting to the jury the question of apparent authority, for the reason that there was, as claimed, no evidence before the jury to justify the finding that plaintiff had knowledge of the fact that Sturm had exercised the right of indorsing checks, without which knowledge on plaintiff's part, no apparent authority could arise.   This question was by the instructions so interwoven with that of estoppel arising from the negligence of plaintiff in not knowing of Sturm's habit in this respect as to make it doubtful whether there was reversible error, conceding that there was no evidence to justify a finding of apparent authority.   Though there is a marked distinction between them, courts and text-writers often confuse implied and apparent authority with agency or authority by estoppel, and apparent authority and estoppel are treated as substantially the same thing.   1 Clark & Skyles, Agency, 143; 2 Enc. L. & P. 817.   Such were in effect the instructions complained of in this case.   The distinction between these classes of authority or agency is well defined.

109 M.—29

Implied authority is that which the principal intends his agent to possess, and which is proper, usual and necessary to the exercise of the authority actually granted. It includes all such "acts and things as are directly connected with and essential to the business in hand." 2 Enc. L. & P. 948. Apparent authority is that which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061; Connell v. McLoughlin, 28 Ore. 230, 42 Pac. 218; Harrisburg v. Washburn, 29 Ore. 150, 44 Pac. 390.

Agency or authority by estoppel arises in those cases where the principal by his culpable negligence permits his agent to exercise powers not granted to him, even though the principal have no notice or knowledge of the conduct of the agent. It is sufficient to estop the principal from disputing the authority in such cases that the course of dealing in the transaction of the principal's business, between the agent and the third persons, was such as to justify them in believing that he possessed the requisite authority, and to make it the duty of the principal to know the manner in which the agent was conducting his affairs. So that where it appears that the principal knew, or by a proper supervision of the affairs of the agency ought to have known, of the acts of the agent, or the general course and manner in which he was conducting the business of the agency, he is estopped as against innocent third persons from denying the power of the agent to act. This doctrine is more or less commingled with apparent authority, though, strictly speaking, they are essentially different in this: Apparent authority is not founded in negligence of the principal, but in the conscious permission of acts beyond the powers granted, whereas the rule of estoppel has its basis in the negligence of the principal in failing properly to supervise and control the affairs of the agent.

5. Plaintiff's further contention that it was entitled to an instructed verdict is not sustained. While there is in the record no evidence that express authority was conferred upon Sturm to indorse the checks, and it is doubtful whether plaintiff had knowledge of his

habit of so doing, yet the question of its negligence in not properly supervising and keeping in touch with the affairs of the agency, and the good faith of the Germania Bank in dealing with Sturm in the belief of his authority, is a close one on the evidence, and within the rule of Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, judgment cannot be ordered, and the cause must go back for a new trial. It would serve no useful purpose to extend the opinion by a discussion of the evidence on this feature of the case.

The law unquestionably imposed upon the Germania Bank, in dealing with Sturm, the duty to make all necessary inquiry as to his authority, and if by doing so it could have prevented the misappropriation of the money in question, it did not become a bona fide purchaser of the checks, and the defense of the defendant herein must fail. The bank was confronted with the fact, when it cashed these checks, that they were the property of plaintiff; it also knew that Sturm was in possession of them as plaintiff's agent; they were payable to plaintiff, and were indorsed by Sturm as plaintiff's manager. This information was clearly sufficient to put the bank on inquiry, and it is not relieved from the consequences of its failure, unless the negligent conduct of plaintiff led it to believe, from facts within its knowledge, that Sturm possessed the power he assumed the right to exercise. Schmidt v. Garfield, 64 Hun, 298, 19 N. Y. Supp. 252; Jackson v. Commercial, 199 Ill. 151, 65 N. E. 136, 59 L. R. A. 657, 93 Am. St. 113; Davis v. Henderson, 25 Miss. 549, 59 Am. Dec. 229; Hamilton v. Nye, 37 Ind. App. 464, 77 N. E. 295, 117 Am. St. 333; Jonathan Mills Mfg. Co. v. Whitehurst, 72 Fed. 501, 19 C. C. A. 130; Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061; Best v. Krey, 83 Minn. 32, 85 N. W. 822; Eggleston v. Advance Thresher Co., 96 Minn. 241, 104 N. W. 891. This branch of the case was properly submitted to the jury.

6. The further contention of plaintiff that the Germania Bank is in no position to urge the question of agency, because in the transactions with Sturm its officers were not dealing with him as an agent, but as an individual, is not sound. Sturm was in fact the agent of the plaintiff, and the bank knew that he was acting in that capacity,

and is unquestionably entitled to urge this fact in support of its purchase of the checks.

This covers all questions necessary to be considered.

Order reversed, and new trial granted.