FRANK M. DIMOND AND ANOTHER v. DISABLED
AMERICAN VETERANS OF THE WORLD WAR,
ST. PAUL CHAPTER, NO. 2, INC.[1]

*December 20, 1935.*

No. 30,701.

*Dudley & Gerber,* for appellant.

*Roy E. Rendahl* and *Arthur T. Nelson,* for respondents.

[1]Reported in 264 N. W. 125.

DEVANEY, CHIEF JUSTICE.

Defendant appeals from an order denying its blended motion for amended findings or new trial.

The action was brought to recover upon open account for certain printing and printing material furnished and provided by plaintiffs, a copartnership. Defendant is a domestic corporation, and, as its name indicates, is organized and functioning by and in behalf of disabled veterans of the late World War. There is no question concerning plaintiffs' claim that it furnished and provided the printing and the physical material going into what is referred to in the record as a "peace pageant" planned and sponsored by defendant. The purpose of the pageant was to raise funds with which to secure the national convention of disabled veterans thereafter to be held in St. Paul. To make this affair a successful one the defendant at one of its regular meetings selected a general chairman to take charge of the job. Headquarters were established for that purpose, out of which the advertising and general work of the committee was to go forth. The chairman so selected directed one J. A. Milam to get such printing and advertising material as might be deemed necessary for that purpose. Pursuant thereto and in accordance therewith, the work was ordered from plaintiffs by Milam, and they in good faith got out and furnished the quantities ordered and, from time to time as directed, delivered same at the headquarters of defendant, from which the same were later put to the use for which intended.

Defendant seeks to avoid liability upon the theory that the chairman had no authority to incur these items of expense. It cites and relies upon Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 448, 124 N. W. 236, 239, 50 L.R.A.(N.S.) 74, as follows:

"Express authority, as involved in the law of principal and agent, is that which the principal directly grants to the agent, and this includes, by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created."

There can be no doubt that the expense was incurred at the instance and request of defendant's chairman, a Mr. Selfe. The record discloses that he was a member of the organization and that his appointment came about at a regular meeting of the defendant organization. A brief excerpt of the testimony of Mr. Walsh, who then was the commander of defendant organization, is pertinent:

A. "I was not general chairman of the Siege.

Q. "Who was?

A. "Edward Selfe.

Q. "How was he appointed to that office?

A. "He was appointed by me and also the organization.

Q. "At a regular meeting?

A. "At a regular meeting, as general chairman.

Q. "Of that Siege?'

A. "Yes, sir.

Q. "And was there minutes made of that?

A. "There should have been.

Q. "And he was authorized by St. Paul Chapter No. 2—

A. "To act as general chairman for that Siege.

Q. "And what powers did he have as general chairman?

A. "To look out for the interests of the Disabled American Veterans."

Pursuant to the authority thus granted, Mr. Selfe instructed Milam what to do. What he did is adequately set, forth in the following excerpt of his testimony:

Q. "And who were you putting on the show.for?

A. "For the pageant committee, of which Eddie Selfe was the chairman.

Q. "For what organization?

A. "Disabled American Veterans.

Q. "What chapter?

A. "Chapter No. 2.

Q. "St. Paul Chapter No. 2?

A. "Yes.

Q. "And what were your duties?

A. "Well, to direct and put on the pageant.

Q. "Did Mr. Selfe ever request you to go and buy any printing for that organization?

A. "Yes, he did prior to the presentation.

Q. "And did you go and buy some printing?

A. "He authorized me to, yes.

Q. "Mr. Selfe authorized you to buy this printing?

A. "Yes, he did.

Q. "For the organization—that is, for the St. Paul Chapter No. 2?

A. "Yes, the Peace Pageant of St. Paul Chapter No. 2.

Q. "Where did you buy this printed matter?

A. "From the Spencer Printing Company of Minneapolis.

\* \* \* \* \*

Q. "Showing you plaintiffs' exhibits I, C, E, B, and D, did you authorize the printing of this certain printed matter?

A. "I did.

Q. "And under the direction of Mr. Selfe?

A. "That is right.

Q. "And what was this authorized printed matter going to be used for?

A. "In connection with this Peace Pageant.

Q. "And that was on it, of course—

A. "Both projects.

Q. —the St. Paul Chapter No. 2. And did you also authorize the printing of plaintiffs' exhibits F and G?

A. "That is right.

Q. "Was there anything else you authorized to be printed?

A. "There seems to be a small window card we had printed.

Q. "And were there any business cards?

A. "Yes, that is what there was, some business cards which were printed."

The only issue presented is whether upon this state of the record plaintiffs made a case. Tested by the rule above quoted, it is obvious that only such result as was reached below could follow.

A pure fact question was involved, and this the court below has decided.

It follows that the order must be and it is affirmed.