FRIEDMAN & SONS, Respondents, v. KELLY,
Appellant.

St. Louis Court of Appeals, May 28, 1907.

1. AGENCY: Apparent Authority.  A principal can become bound
   by the unauthorized act of his agent if the agent acted within
   the *apparent* scope of his authority.  A traveling salesman in sell-
   ing goods for his principal has impliedly authority to employ all
   necessary and proper means for the accomplishment of the sale
   of the goods, which are justified by the usages of trade.

2. ———: ———: Extraordinary Assumption of Authority.  Where
   an agent, such as a traveling salesman, assumes, in the conduct
   of the sale of goods, authority which he did not in fact have and
   of such extraordinary character as would put a reasonably
   prudent man upon his inquiry, such party dealing with him can-
   not in that case hold his principal on the ground of apparent
   authority.  Where a traveling salesman selling ladies' cloaks
   for his principal agreed with a purchaser that he might retain
   the cloaks until after the season was over and then return
   such as were not satisfactory, this was an agreement so unusual
   and extraordinary that the purchaser should have taken notice
   that the agent had no authority to make it, and the purchaser
   could not claim the right to return the cloaks on the ground
   that the agreement was within the apparent scope of the
   agent's authority, especially where the evidence showed that he
   knew the proposition was extraordinary.

Appeal from St. Louis City Circuit Court.—*Hon. Moses
N. Sale,* Judge.

AFFIRMED.

Friedman & Sons v. Kelly.

*Frank A. Hobein, Cornelius F. Bauer* and *Vital W. Garesche* for appellant.

Where the principal puts an agent forward as a general agent, though in a particular line, or places him in a position where others are justified in the belief that his powers are general, the restrictions that may be imposed upon him privately will be immaterial except as between him and the principal. Samuel v. Bartee, 53 Mo. App. 587; Woolen Mills v. W. B. Myers & Co., 43 Mo. App. 130; Johnson v. Hurley, 115 Mo. 513; Sharp v. Knox, 48 Mo. App. 169; Kinealy v. Burd, 9 Mo. App. 359; Porter v. Woods, 138 Mo. 551; Baker v. Railroad, 91 Mo. 152; Railroad v. Railroad, 110 Mo. App. 309.

*Henry H. Furth* for respondents.

(1) In law cases, the appellate court will not weigh the evidence, nor reverse on the weight of the evidence. Waddell v. Williams, 50 Mo. 216; Will v. Dryden, 52 Mo. 319; Bray v. Kemp, 113 Mo. 552; State v. Richardson, 117 Mo. 586. (2) An agent has implied authority to do whatever is usual to carry out the object of the agency and the principal is liable for the acts of his agent which are within the ordinary and usual scope of the business he is employed to transact. Tiffany on Agency, secs. 45-47, p. 189; Benjamin on Sales (Bennet Ed.), sec. 624, p. 580. (3) The scope of an employment is generally a matter of fact, to be found by the triers of the facts. The burden of proof is on a person claiming under a contract with another made through an agent to show by satisfactory evidence that the contract was within the scope of the agent's authority. Sharp v. Knox, 48 Mo. App. 169, 176; Johnson v. Hurley, 115 Mo. 513; Hayner v. Churchill, 29 Mo. App. 676, 682. (4) An agent to sell has no implied power to sell on unusual terms or give unusual warranties. Herring v. Skaggs, 73 Ala. 446; Troy Gro. Co. v. Potter

& Wrightington, 36 So. 12; Palmer v. Hatch, 46 Mo. 585; Upton v. Suffolk Mills, 11 Cush. 586; Wharton on Agency, 189, p. 134; Mechem on Agency, 350, 362, pp. 221, 225; Story on Agency (2 Ed.), 60, p. 78.

NORTONI, J.—This case involves the apparent authority of an agent, a traveling salesman. The only question worthy of note is whether or not a traveling salesman may obligate his principal, as within the scope of his apparent authority, by a positive agreement or contract in connection with a sale of goods, which agreement or contract is entirely beyond his express authority, and is not an ordinary or usual contract, comporting with any custom or usage of the trade; or, in other words, is an extraordinary and unusual agreement, when measured by custom or usage of the trade in which he is engaged, and so known to be by the parties.

The suit is on an account stated, for the value of a bill of ladies' coats or cloaks, sold by plaintiffs to defendant. The material facts in evidence disclose the plaintiffs to be manufacturers of ladies' cloaks in the city of St. Louis. The defendant is a retail merchant, located at Waukegan, Illinois. About June 1, 1904, plaintiffs' traveling salesman, one John Gately, called upon defendant at his place of business and sought to sell him a bill of cloaks. The defendant stated he did not care to purchase from a St. Louis house. Gately insisted upon showing his line of goods and the parties adjourned to the hotel where Gately exhibited his samples and represented to the defendant that inasmuch as his samples were being handled daily, the cloaks which he would receive upon purchase would, in fact, show better, etc., that all of the cloaks over a certain price would be lined with Skinner satin, which lining was guaranteed to wear two seasons, and each would be supplied with a slip sewed inside of the coat containing the words, "Skinner Satin Lining." The defendant finally purchased a bill of some several hundred dollars

in value, to be paid for on or before December 1st, with seven per cent off for cash, if paid by December 10. The traveling salesman stated repeatedly to defendant that if the goods were not in all respects as he represented them to be, or if for any cause, defendant found that he could not sell the goods, he might return all or any portion of them to the plaintiff on or before December 10 and receive credit for them. We might say here it is abundantly established in the evidence that the traveling salesman had authority to make the representation as to the Skinner satin lining and the two years' guarantee, but had no express authority for making the statement or to contract that if for any reason the defendant could not sell the goods, he might return all or any part of them to the plaintiff on or before December 10, and receive credit therefor. And in this connection, it is proper to state that the traveling salesman did not notify the plaintiffs at any time that he had made, or had attempted to make, any such agreement with the defendant.

In due course, the cloaks were shipped to and received by defendant. After receiving the same, it is shown on the part of defendant the cloaks were not in all respects as represented by the traveling salesman in that the seams in the backs of some of them were crooked and none of them had the slip sewed inside thereof signifying Skinner satin lining. The defendant placed the cloaks in his stock and made no complaint thereabout at the time. It is shown that the only communication passing between the parties was a couple of letters or post cards some weeks later whereby defendant made a special order for one additional cloak, without any complaint respecting those theretofore received by him. It appears, however, that Gately, the traveling salesman, called at defendant's store several weeks thereafter, in August, about the time or soon after he was discharged by plaintiff, and that defendant

complained to him about the cloaks. They looked them over, whereupon Gately requested the defendant to keep them, make no complaint, and to sell them if he could. On October 26, the defendant, after selling some and selecting certain others of the cloaks which he desired to retain in his stock, packed the remainder and shipped them to plaintiffs at St. Louis. The same day he rendered an account to them by mail whereby he charged himself with such cloaks as he had retained, credited such as he had returned, and inclosed a draft to cover the invoice price of those not returned. This statement of account and draft was mailed to plaintiffs without any letter of explanation or assigning any reason for his action thereon other than the following indorsement on the bottom of the account: "This firm sold out. (Signed) Kelly Bargain Store." Upon receipt of this communication, plaintiffs passed the draft to defendant's credit and notified him promptly by wire that they would not receive the goods and he had better recall them at once. On the same day, plaintiffs wrote the defendant to the effect they could not receive the goods, would expect payment promptly when the bill was due, and further saying: "We have been in business a good many years but we have never seen any one who keeps goods for months in his store and then return them at the end of the season. . . . You do not even offer any explanation why these goods are returned." On the same day, upon receipt of plaintiffs' telegram, defendant answered by letter, in part, as follows: "Your jackets are not as Mr. Gately sold the goods. This we can prove and regret we cannot accept the goods only as sold." On November 4 plaintiff answered: "We certainly do not know what you are driving at. If these goods were not satisfactory or in any way up to sample, you should have returned them immediately on receipt, not months after you had them. We know absolutely no reason why these goods were returned and we will not

accept them. It seems very strange to us that if you had any reason why you returned them that you do not state it. The only thing you say is that they are not as Mr. Gately sold them. If such is the case, why did you not return them at once?" On November 11, plaintiffs wrote defendant that the case of goods had been proffered to them on that date by the railroad company but they had declined to accept them, and further said: "Under no condition will we accept the goods because you sold out your business. That is none of our affairs what you do. As soon as the bill is due, we will expect you to pay it. . . . No business man with common sense would think that after keeping goods a few months, he could send them back at the end of the season for no reason whatever." On November 12, the defendant replied: "We positively will not accept the goods as they are not as ordered and would have sent the entire lot only the case was not large enough. The goods did not have the guarantee that the sample called for, so you can take any steps you want, as we have proof that the goods were not in any way up to sample." After the account became due, defendant further declining to pay the same, plaintiff instituted this suit by attachment and caused the writ to be levied upon the parcel of goods returned, as property of defendant, which goods were then in the custody of the railroad company. The attachment was sustained and the goods sold thereunder by an officer.

The issues on the merits of the case were tried before the circuit court without a jury and it is that trial with which we are now concerned. In the circuit court plaintiff made a prima-facie case by proving the sale and delivery of the goods and their value, whereupon defendant assumed the burden of showing the goods were not as warranted, etc., and that under his contract with the traveling salesman he had the right to return the same to the plaintiff at any time prior to December 10,

according to his theory, whether they fulfilled the warranty or not. To quote from his testimony, he had the right to return all or any part of the goods by the tenth day of December, "if the garments would not be satisfactory, or if the styles should change." And from other portions, it appears that it was agreed he could return the goods for any or no reason. It appears the manager of defendant's store was one Gately, a brother of the traveling salesman, and besides the defendant, his manager and the saleslady testifying to this contract, John Gately, the traveling salesman himself, who sold the goods, gave evidence to the same effect on the part of defendant. He said of the agreement: "I told Mr. Kelly that if he would take these coats, we would take back all or any of them on or before December 10, but not later." It appears that John Gately had been in the employ of plaintiffs from January 1st only of that year, a period of about six months, and neither he nor the plaintiffs' firm had ever sold goods to this defendant prior to that transaction, and that Gately was discharged from the plaintiffs' service about August or September of that year. His testimony manifests friendly spirit toward the defendant, to say the least, and although he gave positive evidence to the effect that he agreed the goods might be returned on or before December 10, if the defendant desired so to do, he admitted that he had no express authority from his principals to make such a contract, admitted also that it was an extraordinary arrangement and that he had not notified plaintiffs, his principals, of the agreement at all. He sought to justify his conduct in that behalf by saying it was difficult to introduce St. Louis goods among dealers so near to Chicago and he had no doubt the arrangement would turn out all right, inasmuch as defendant was of the class he termed "good people." He also said that he had known of such arrangements being made by the representatives of one or two other houses,

but did not seek by the evidence to establish a usage or custom of trade to that effect.

On the part of plaintiffs in rebuttal, the proof shows Gately had authority and was in fact instructed to represent the cloaks of a certain price as being lined with Skinner satin and guaranteed for two years, but his authority to make the extraordinary agreement as to the return of goods at any time before December 10, was expressly denied, and it was further shown that plaintiffs had no knowledge from Gately or any other person, of such arrangement with respect to this transaction. No one for defendant, however, denied that Gately made such contract. In fact no one could deny it, for they had no knowledge on the subject. It was also shown on the part of plaintiffs that the cloaks were lined with Skinner satin and guaranteed as represented. Besides a member of plaintiff's firm, the merchant who purchased the goods at the sale under the attachment writ testified the same were so lined and did, in fact, fulfill the warranty as to quality, etc.

At the conclusion of the evidence, the defendant requested no instructions. Plaintiff requested one only and this the court refused. Such refusal is immaterial here, however, inasmuch as the issues were found for the plaintiffs and defendant appeals. There is nothing in the record indicating on what theory the trial court predicated the judgment. In view of the uncontroverted proof with respect to the agreement for the return of the goods, the only possible theory upon which the court could have found for plaintiffs is that the agreement, although made, was beyond the apparent authority of the agency of a traveling salesman. That question will be presently noticed.

1. Now as to the issue with respect to the goods having failed to fill the warranty as to quality, satin lining, etc., there was evidence pro and con on this question and the matter is entirely foreclosed here by the

finding of the court in favor of the plaintiffs, which, in effect, determines the cloaks to have been as warranted. The law is abundantly established to the effect that when an issue of fact, as this one was, is submitted to the trial court without instructions and there is substantial evidence in support of the finding and judgment thereon, the matter therein adjudicated is removal beyond the pale of controversy on appeal. [Jordan v. Davis, 172 Mo. 599, and numerous cases cited therein.] The judgment of the court on this issue is supported by substantial evidence and the matter will not be further noticed.

2. In view of what has been said, it is obvious the only question of importance which the court is called upon to consider is whether or not a traveling salesman, without express authority so to do, or custom of trade in that behalf, could, on the sale of goods to a customer, obligate his principal by an agreement that any portion or all of the goods might be returned on or before the date of settlement, even though the season for the sale by his principal of such goods to the retail trade has quite, if not entirely expired for the year at that time; that is, obligate his principal by an extraordinary or unusual contract, not in any respect supported or sanctioned by an usuage or custom of the trade. Now it is certain a salesman having no express authority to enter into such a contract, his principal can only become obligated by the act of the agent in that behalf upon one of two theories. First, the principal would be bound if he had knowledge of the arrangement and either did, or omitted to do, any act which would amount to a ratification of the contract as made (and in this case there is no evidence nor claim of a ratification of any kind), or secondly, the principal would, of course, be bound by the act of the agent if the contract made by him was within the apparent scope of the agent's authority. This proceeds upon the most fundamental principles of nat-

ural justice underlying the law of agency to the effect that when one has clothed another with authority and put him forward in the world of commerce to do and perform acts generally in and about the sale of his commodities, he will be responsible for any and all acts of the agent in making the sale which comes within the apparent scope of such an authority; for when one, even though without intentional fraud, has enabled another to do an act which must be injurious to himself or to another innocent party, he who has thus enabled the other person to do the act, should suffer any consequences rather than the innocent party who has placed confidence in him. This is the general principal as we understand it. [Story on Agency (2 Ed.), secs. 126, 127; Baker v. Railroad, 91 Mo. 152, 3 S. W. 406.] This responsibility of the principal for the acts of his agent, not expressly authorized, is limited however to such acts as are within the apparent scope of the authority conferred; that is to say it is implied, of course, that an agent on the road, such as a traveling salesman, for the sale of goods to various dealers, has the authority to employ all necessary and proper means for the accomplishment of the sale which are justified by and consistent with the usages of trade. Or to state the proposition in other language, the law presumes, and those dealing with the agent have the right to act upon this presumption of law, that the agent is authorized to sell the goods in the usual manner and only in the usual manner, and make such contracts thereabout as are reasonable or comport with the usage and custom of the trade in like undertakings and it is to this extent, and this extent only, that an agent may be said as a matter of law, to be acting within the scope of his apparent authority. [Story on Agency (2 Ed.), sec. 60; Tiffany on Agency, secs. 45, 47; Benjamin on Sales (6 Ed.), sec. 624; 6 Am. and Eng. Ency. Law (2 Ed.), 224; Wharton on Agency, sec. 189; Mechem on Agency,

secs. 350, 362; 1 Clark & Skyles on Agency, sec. 244; Upton v. Suffolk County Mills, 11 Cush. (Mass.) 586.]

Now in keeping with the principles thus stated, it was determined by our Supreme Court in Palmer v. Hatch, 46 Mo. 585, that while a traveling salesman on the road, with general authority to sell whiskey for his principal, had authority to employ the usual modes and means of accomplishing the sale, and sufficient to warrant the quality and condition of the whiskey sold, an unusual warranty, such as to warrant against any seizure of the article for violation of the revenue laws, may not be included within the limits of the apparent scope of the authority of such agency. And so, too, in Butler v. Dorman, 68 Mo. 298, it was held that the authority of an agent selling by sample and on credit, but not entrusted with the possession of the goods to be sold, could not be extended so as to authorize him to bind his principal by receiving payment for the goods, under the doctrine of apparent authority. And so too in Chambers v. Short, it was adjudged that the apparent authority of a canvassing agent for the sale of books by subscription, to be afterwards delivered, did not include authority to receive payment for such books to be subsequently delivered and not then in his possession. And likewise the Supreme Court of Massachusetts, in Upton v. Suffolk County Mills, 11 Cush. (Mass.) 586, adjudged that it was not within the apparent authority of an agent selling flour to bind his principal by a warranty that the flour sold by him on the account of his principal, would keep sweet during a sea voyage, in the absence of any usage or custom of the business to that effect.

As a correlative of the principle which affixes the limitation of the rule with respect to the apparent authority of an agent, as above indicated, there is another and companion principle which enforces a reasonable

degree of diligence upon those who deal with the agent, in relying upon his apparent rather than his express authority to bind the principal, and that is, the person dealing with the agent, although ever so innocent, will not be permitted to ignore all the precepts of common sense pointing contrawise and rely exclusively upon the representations or promises of the agent, however unreasonable, for the law with respect to every relation of life not involving intentional fraud or malice, as we understand it, sets up an ordinarily prudent man as the standard by which the conduct and affairs of other men should be governed and in consonance with this standard, a person dealing with an agent is required to act with ordinary prudence and reasonable diligence. Therefore, if the authority which the traveling salesman assumes to exercise in and about the consummation of the sale of such goods, is of such an unusual, improbable and extraordinary character as would be sufficient to place a reasonably prudent business man in dealing with him, upon his guard, the party so dealing will not be justified in disregarding his senses and overlooking the real situation, and thereafter seek to hold the principal, upon the theory of the agent's apparent authority. Under such circumstances, it is the duty of the party dealing with the agent to either refuse to close negotiations with him at all or first proceed to ascertain from the principal whether the true scope of his authority is such as will authorize the extraordinary and unusual contract proposed. The principle last mentioned not only comports with the ends of justice sought to be attained by the established law of principal and agent, but it is in fact one of the fundamentals of our entire system of jurisprudence and is as sound as the rock of ages. [1 Clark & Skyles on Agency, sec. 210; Mechem on Agency, secs. 290, 362; Wharton on Agency, sec. 137; 6 Am. and Eng. Ency. Law (2 Ed.), 224; 1 Am. and Eng. Ency. Law (2 Ed.), 987.] And the doc-

trines above referred to apply equally as well to that familiar class in the business world, known as traveling salesman, as to any other character of agency. [See 1 Clark & Skyles on Agency, secs. 244, 247; 6 Am. and Eng. Ency. Law (2 Ed.), 244 et seq.; Mechem on Agency, 350, 362.]

Now let us examine the pertinent facts in proof under the influence of the principles above stated. The evidence discloses these parties had no usual course of dealing between themselves. In fact, this was the first transaction between not only the plaintiffs and the defendant, but between defendant and the traveling salesman as well, and while it appears from the evidence of Gately that he had known of one or two sales being made by representatives of other concerns on terms similar to those involved here, there is nothing to show that the defendant had any knowledge of those transactions. He did not rely upon them, and there is positively no proof of a custom or usage of trade to that effect. On the contrary, the proof and all reasonable inference therefrom, disclose that a contract, such as that here relied upon by the defendant, that he might return the goods if not satisfactory, or for any or no reason on or before December 10, was not only an unusual and extraordinary contract for a traveling salesman to propose, but was unreasonable as well inasmuch as under those conditions one might hold goods until they would be greatly depreciated by the lapse of time. Especially is this true of such goods as ladies' cloaks, one of the chief and principal elements in the value of which consists in current style and pattern which, to be realized upon, necessitates placing them upon the market in the early autumn that they may be disposed of before the styles change. There is no doubt the defendant himself regarded the salesman's proposition as both extraordinary and unusual, as appears from his testimony. Quoting therefrom, he said: "I told the young lady to

make her selection as we did not want to buy goods on better terms than those." In speaking of the proposition, he said: "I never had a salesman make that kind of a proposition. Q. Wasn't it a peculiar proposition for a salesman to make; an unusual proposition? A. The man was hungry for trade. I think he was anxious to get business on any proposition up here; I think that was his object more than anything else." And again: "Q. Would it not appear unreasonable that you should have the privilege to return the goods up to December 10, after all shipments are made? A. I took the salesman's statement. That was all I went by." It is clear under the facts in this record, that instead of anything appearing to cause the defendant to believe the contract was one within the agent's apparent authority, as being usual and ordinary in the course of such business, the case of an extraordinary and unusual proposition is presented, so unreasonable and so entirely repugnant to the usual course of conduct pursued by business concerns, that this defendant being governed by the standard of an ordinarily prudent business man must have known, and in fact, every reasonable inference from the proof shows that he did know, the authority of the salesman to that extent was improbable. He is therefore precluded from asserting the apparent authority of the agent to make the contract, which, if made, and was binding in every case, would probably result in entailing bankruptcy upon the most stable manufacturers and wholesalers who attempted to sustain their credit by abiding such conditions.

The learned trial judge was correct in his conclusion on this feature of the case; that the salesman exceeded his apparent authority to such an extent that even though the contract was made by him, it was unenforceable and his principal was not obligated to respond thereunder. For the reasons given, the judgment will be affirmed. *Bland, P. J.,* and *Goode, J.,* concur.