JOHN C. HILL, DOING BUSINESS AS JOHN C. HILL LUMBER COMPANY v. LLEWELLYN JAMES, JOHN R. JAMES, HAROLD W. JAMES AND F. S. COOPER, COPARTNERS DOING BUSINESS AS L. JAMES LUMBER COMPANY.[1]

February 18, 1921.

No. 22,141.

**Sale—quaere.**

1. Whether the writing set out in the opinion amounted to a completed contract of sale, quaere.

**Traveling salesman without authority to make contract for employer.**

2. If it did, plaintiff's agent, known to defendants to be a traveling salesman, had no authority to bind plaintiff by entering into it.

**Notice to third persons of agent's power.**

3. A third person dealing with a known agent is charged with notice of his powers and cannot rely on his assumption of actual authority to bind his principal, but must investigate and ascertain the nature and extent of his powers.

**Actual power of agent must be ascertained.**

4. One dealing with a known agent must exercise reasonable prudence, and, if the agent tenders a contract so unusual as to arouse the inquiry of a man of average business prudence, he is put upon notice and must ascertain if actual authority to enter into the contract has been conferred.

**Evidence insufficient to submit question to jury.**

5. There was a lack of sufficient evidence to require the court to submit to the jury the question of the authority of plaintiff's agent to make an absolute contract of sale.

[1]Reported in 181 N. W. 577.

Action transferred to the district court for Hennepin county to recover $732.62 for a carload of maple flooring. The answer interposed a counterclaim for $19,750 less such amount as should be found owing plaintiff with interest. The case was tried before Molyneaux, J., who at the close of the testimony granted plaintiff's motion to dismiss the counterclaim and for a directed verdict of $787.66. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Thompson, Hessian & Fletcher,* for appellants.

*T. J. Doyle* and *J. P. Kyle,* for respondent.

Lees, C.

Plaintiff had a directed verdict in an action brought to collect for a carload of maple flooring, and defendants appeal from an order denying a new trial.

Plaintiff is an individual trading under the name of John C. Hill Lumber Company. Defendants are copartners, their business being managed by one A. A. Hood. Both parties are in the lumber business, plaintiff buying from the mills and reselling to wholesale and retail dealers, and defendants being such dealers. Plaintiff handled lumber on a commission basis. He employed Allen Kirkpatrick as a traveling salesman and divided his commissions with him, allowing him 40 per cent thereof. Kirkpatrick was his only salesman. His authority was limited to taking orders and forwarding them to plaintiff for approval. Plaintiff's office was in St. Paul. He made sales at or through this office. He also had an office in Minneapolis for the use of Kirkpatrick. Lumber sold was shipped direct from the mills to the purchaser.

In October, 1918, a carload of flooring was refused by one of plaintiff's customers. Plaintiff directed Kirkpatrick to find a purchaser for it. Kirkpatrick sold it to defendants, Hood acting for them in making the purchase. Thereafter there were negotiations between Kirkpatrick and Hood for the sale of enough flooring to supply defendants' trade during the season of 1919. Hood wanted to buy two million feet, and named the price he was willing to pay. Kirkpatrick made a trip to a mill in Michigan to ascertain whether that amount

could be procured at the price offered. After he returned to Minneapolis he received a telegram from the millowner advising him that the price was satisfactory, but only one million feet of flooring could be supplied. He called on Hood and showed him the telegram. After some further negotiations and on January 31, 1919, at defendants' office, under Hood's directions and on forms furnished by plaintiff to Kirkpatrick, duplicate orders were prepared. The printed portions of the forms read:

St. Paul, Minn.————191—

J. C. Hill Lumber Company,

St. Paul, Minn.

Gentlemen:

Please enter our order for the following flooring which ———— agree to order you to ship on or before ————————191——. Prices F. O. B. cars ————————.

(Here followed a space for the description of the flooring ordered, the quantities and the prices).

The above prices are based upon present existing freight rate.

If the rate is advanced the buyer is to pay the increasee and to also pay the Federal War Tax on freight receipts.

Total feet ordered ————————.

TERMS. 60 days from date of shipment, less 2% 10 days after deducting freight.

It is understood and agreed ———— can order more or less of each kind of flooring as ordered above, providing the total feet does not exceed ———— thousand feet, you to ship any excess ordered over and above the amount as above speecified promptly as your other business booked will permit.

Yours truly,

————————

By ————————

The acceptance of this to be a contract between us and is binding to both.

John C. Hill Lumber Co.

By ————————

The forms were filled out by inserting the date of the order, the date when it was to be filled, the kinds of flooring and the prices, followed by the addition of the words: "These prices are guaranteed against decline of Association quotations." After the printed terms of payment, the words "or trade acceptance under usual terms" were added. A printed slip was pinned to the payment clause in the order, reading as follows:

OR

Trade Acceptance sent us within 5 days after arrival of car, less 2 per cent after deducting freight, plus 4½ per cent per annum for 60 days, 5 per cent for 90 days, or 6 per cent for 4, 5, 6 months acceptances dated 15 days from date of shipment.

The order was signed: "L. James Lumber Company, By A. A. Hood." Kirkpatrick affixed his signature after the word "by" at the end of the order. One copy of the order was retained by Hood and the other was mailed to plaintiff. On February 3, 1919, plaintiff wrote defendants, declining to accept the order ostensibly on the ground that the price was too low. Defendants made no response until March 4, when, in reply to a demand for payment for the flooring sold in October, Hood wrote that defendants had a claim of over $1,000 for damages occasioned by plaintiff's breach of the alleged contract of January 31.

This action was brought in June, 1919. Thereupon and before answering, defendants made a demand for one million feet of flooring, and later answered, alleging by way of counterclaim that the price of flooring had advanced since January 31 and that they were damaged in the sum of $19,000 by reason of plaintiff's failure to carry out the alleged contract. There was no controversy about plaintiff's right to recover the purchase price of the carload of flooring. The bone of contention was the counterclaim, and as to it the court was of the opinion that Kirkpatrick had no authority to bind and had not bound plaintiff by entering into the alleged contract. For that reason the counterclaim was withdrawn from the consideration of the jury and a verdict directed in plaintiff's favor. On this appeal the question to which the briefs and argument were almost wholly addressed was whether

Kirkpatrick had authority to bind plaintiff by executing the alleged contract as his agent. An additional question is touched upon in plaintiffs' brief, viz., whether a contract was completed when Hood and Kirkpatrick signed the order.

1. The printed portion of the paper immediately preceding defendants' signature amounts to nothing more than an order for flooring. Its acceptance by plaintiff was manifestly necessary to complete the contract which defendants proposed to enter into. He did not personally accept it, but promptly notified defendants that he would not do so. The printed form notified defendants that, to be a binding contract, the order would have to be accepted. It does not indicate the manner in which plaintiff should signify his acceptance. Defendants contend that it was to be manifested by the signature of the plaintiff or his authorized agent at the bottom of the paper. There is grave doubt about the correctness of this contention. The words are not those of a present acceptance. They do amount to a declaration that no formal contract of sale will be required and that the terms expressed in the order shall be those of the contract, provided plaintiff gave his consent to them. If it was intended that the acceptance should appear on the order blank, the word "Accepted" or "The above order is hereby accepted," or their equivalent would naturally have been used. We should have little difficulty in holding that there was not a completed contract of sale, if that were the only question which the parties had urged upon our consideration as the vital one in the case.

2. In view of the course followed at the trial and in the presentation of this appeal, it becomes our duty to consider the question to which the parties gave nearly all of their attention, viz.: Does the evidence show any authority on the part of Kirkpatrick to enter into an absolute contract of sale?

It is familiar law that a third person dealing with a known agent is charged with notice of his powers where it is claimed that the agent had actual authority to bind his principal. The general rule is that he cannot rely on the assumption of authority, but must investigate and ascertain the nature and extent of the agent's powers. Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 124 N. W. 236,

50 L.R.A.(N.S.) 74; Bloomingdale v. Cushman, 134 Minn. 445, 159 N. W. 1078; Doeren v. Krammer, 141 Minn. 466, 170 N. W. 609; Hedding v. Schauble, 146 Minn. 95. 177 N. W. 1019; 1 Dunnell, Minn. Dig. § 169. The claim is that Hood was justified in assuming without inquiry that Kirkpatrick had authority to enter into the alleged contract in plaintiff's behalf. Hood was defendants' only witness. He had no dealings with plaintiff or Kirkpatrick prior to January 31, 1919, other than the October purchase of one carload of flooring. That transaction was evidenced by an order written on one of defendants' blanks and was in form quite unlike the order now under consideration. Hood knew that plaintiff's principal office was in St. Paul and that Kirkpatrick was not in it but in the Minneapolis office. None of Hood's transactions with Kirkpatrick took place in either office. Hood knew that Kirkpatrick was plaintiff's traveling salesman. Plaintiff was accessible, and, though he could easily have done so, Hood did not inquire as to Kirkpatrick's authority to enter into a contract involving a million feet of flooring and approximately $50,000 in money. The magnitude of the transaction, the period of time covered by the alleged contract, the privileges it gave defendants in making payments, the guarantee to them of the advantage of lower prices if the market quotations for flooring declined, and the material additions to and alterations of the terms of the printed order form, might well have caused them to hesitate before proceeding to act on the assumption that a traveling salesman had power to bind his principal by such a contract.

One dealing with a known agent for another must exercise reasonable prudence. If the agent, even though a general one, tenders a contract so unusual as to arouse the inquiry of a man of average business prudence, the person to whom the contract is tendered is put upon notice and must ascertain if actual authority to enter into it has been conferred. Stephens v. John L. Roper Lumber Co. 160 N. C. 107, 75 S. E. 933, 41 L.R.A.(N.S.) 1141; Friedman & Sons v. Kelly, 126 Mo. App. 279, 102 S. W. 1066; 21 R. C. L. 909; 2 C. J. 563; Mechem, Agency, § 752. The fact that Kirkpatrick had previously sold defendants one carload of flooring and that plaintiff had recognized the sale is, of course, some evidence of Kirkpatrick's authority to make

sale contracts for plaintiff. If the last transaction had been of the same general character as the first, plaintiff would probably have been bound. But the first transaction involved only 15,000 feet of flooring, sold for $53 a thousand. It appears inferentially that even that sale was confirmed by letter from the plaintiff, for these words were stamped on the October order: "Received Oct. 12, 1918. Answered." We think the facts stated bring this case within the application of the rule of Japan Tea Co. v. Franklin MacVeagh & Co. 142 Minn. 152, 171 N. W. 305.

Defendants concede the rule to be as it is there stated, but contend that a traveling salesman may have authority to make an absolute contract of sale. They also contend that Kirkpatrick was something more than a mere traveling salesman. Undoubtedly his principal may clothe a traveling salesman with apparent or ostensible authority to enter into absolute contracts of sale. but the burden of proof rests upon him who asserts that the principal has done so. The ultimate question is whether, on the showing made by defendants, the court was required to submit that issue to the jury. We have examined the cases cited by defendants in support of their contention in this respect. None of them seem to be in point. In some, the writing was in no sense a mere order inviting an acceptance. In others, goods were purchased at the principal's salesroom from a general agent in charge thereof, or the agent was not a traveling salesman calling on buyers and taking orders for goods.

We reach the conclusion that the court properly disposed of the case on the theory that the evidence would not have justified the jury in finding that Kirkpatrick had any authority to enter into the contract upon which defendants' counterclaim is based.

Order affirmed.