Jean W. Thudium, Respondent, v. Central States Savings & Loan Association, Appellant.—31 S. W. (2d) 220.

Springfield Court of Appeals. September 25, 1930.

*Borders, Borders & Warrick, H. T. Lincoln* and *John J. Wolfe* for appellant.

Norman A. Cox and Hugh Dabbs for respondent.

COX, P. J.—Action for money had and received. A jury was waived and the case tried by the court. Plaintiff recovered $1124.60, the full amount asked and six per cent interest from the date of the suit which made a total of $1138.55. Defendant appealed.

Defendant was a savings and loan association and sold stock to be paid upon monthly until it should mature and also made real estate loans. Plaintiff claimed to have bought certain stock in defendant company known as Class D stock that was two years old when she purchased it from one H. L. Williams, who was the agent of defendant at Joplin, Missouri, and that she made monthly payments thereon to said Williams until she had paid $1124.60, the amount sued for, but that she had never received the stock on which these payments were made, though often demanded, and she had also demanded same from defendant or the return of her money which had been refused.

The defendant admitted that during the time plaintiff claimed to have bought the stock from Williams and made payments thereon to him, Williams was their agent at Joplin but denied that the company was at that time selling Class D stock and denied that Wil-

liams had authority as their agent to sell to plaintiff: the stock she claimed to have purchased.

The transactions between plaintiff and Williams were testified to by plaintiff and were not controverted but the testimony of defendant was for the purpose of showing that Williams, as agent for defendant, was not authorized to sell to plaintiff the stock she claimed to have bought from him. This practically confined the issue of fact at the trial to the question of the authority of Williams as agent to bind defendant by his transactions with plaintiff. Plaintiff testified that she borrowed $2750 from Williams in July, 1927, that would be due in three years at six per cent interest. This was a private loan by Williams to her and not a loan by the company. At that time she owned Class D stock of defendant that she had purchased through a former agent of defendant at Joplin. She made her monthly payments on this stock to Williams. When she went to his office in October, 1927, to make a monthly payment she told Williams that she intended to deposit in the Conqueror Trust Company of Joplin $125 per month and that company would pay her four per cent on it and in that way she would save enough to pay off her loan from him when it became due. Williams then suggested to her that she could do better than that by buying two years old D stock in defendant company. He said he had such stock that had been turned back to the company by people who wanted their money out of it and said "I can arrange it so that on this D stock if you pay one-hundred-twenty-seven dollars and forty cents a month and keep up the current payments, monthly payments in addition, you can pay this out in three years instead of ten." She agreed to do that. She then began her monthly payments to him under that agreement and continued them until Mr. Williams was discharged by defendant as its agent. She had asked Williams for the stock she had purchased and he told her that when the payments caught up the back interest on the stock, she would get the stock but she did not get it nor the pass book that went with it. The agency contract between defendant and Williams was in evidence. It was a contract entered into between defendant and a Mr. Gorman and then by consent assigned to Williams. This contract provided that the agent was appointed to act for defendant "for the purpose of selling the several forms of stock, certificates and other forms of investments that the association now issues or that it may from time to time issue for savings and investment purposes. . . . Subject to the following agreements, conditions and limitation.". It is then provided that the territory in which the agent could act for defendant covered the counties of Barton, Jasper, McDonald and Newton. The agent should bear his own expenses, provide and maintain an office for the transaction of his agency business. All

salesmen or other persons employed by him should be his agents and not the agents of the company and if their defaults or misrepresentations should cause loss to defendant, then the district agent (Williams) should be primarily responsible to the company therefor. He should use his best efforts to sell annually $500,000 of stock, certificates and other investments for defendant and if in any month he sold less than $10,000 in any county, the company could, by their agents and representatives, enter said county and makes sales independent of said district agent. All funds received by the district agent from sales, collection, or whatever sources, should be trust monies in his hands and not used for any purpose except deposit and remittance to the company except that he could retain from it his own compensation. He was to furnish bond against loss of funds collected by him. The company was to furnish to him, free, such literature and advertising matter as they should issue for general distribution. This agency contract was executed July 15, 1926, and assigned to H. L. Williams, September 15, 1926, and Williams acted as defendant's agent until May 24, 1928, when defendant discharged him.

Defendant's evidence tended to show that the company discontinued issuing Class D stock October 13, 1925, and Williams was never authorized by defendant to sell Class D stock. That when any stock is surrendered and sent in for cancellation, the cash value thereof was paid the stockholder and the stock then had no further value and could not be resold by any agent. Any stockholder could transfer his stock to another and the company would recognize the transfer. The officers of the company had no knowledge of Williams' transactions with plaintiff upon which this suit is based.

There are two assignments of error.

First: That a demurrer to plaintiff's evidence should have been sustained.

Second: That the judgment is excessive.

It is contended by appellant that Williams was not a general agent of defendant and that it was the duty of plaintiff to ascertain the authority of Williams as agent of defendant before making the purchase she claimed to have made from him. Also that the transaction was unusual and out of the ordinary course of such an agent's business and that placed upon plaintiff the burden to ascertain the actual authority of Williams and she could not rely upon any claim of apparent or implied authority.

That Williams was the agent of defendant to sell its "stock, certificates and other forms of investments" was specifically provided in his contract with defendant. He was assigned four counties in which he was a district agent and no other person could sell stock or take applications for real estate loans in those counties for

defendant except on the condition that he should fail to sell $10,000 in stock in any one county in a month, in which case the defendant could send another agent or representative to sell in that county. Payments upon stock sold in that territory were to be made to him. He was to furnish bond for its protection against loss of funds received by him. The sale of stock in the four counties in his district was placed solely in the hands of Williams. In our judgment the agency contract between Williams and defendant made him a general agent of defendant for the sale of stock in his district. [Kissell v. K. R., 194 Mo. App. 346, 355, 188 S. W. 1118; Depository Company v. Realty Co., 165 Mo. App. 131, 138, 146 S. W. 448.]

Being a general agent of defendant for the sale of its stock, plaintiff would have the right to assume that he was authorized to sell any stock of defendant that he offered her. There is no evidence to show that plaintiff knew anything about the inside details of defendant's business. No evidence that she had any knowledge that defendant had ceased to issue Class D stock or that a general agent of defendant was not authorized to take up and resell Class D stock such as she bought from Williams. She, of course, knew that the company sold stock but that is all that she did know. There is no evidence that she had any knowledge of any restrictions upon the right of defendant's agents in selling stock. Plaintiff had purchased two shares of stock in defendant from individual owners and the transfer of that stock from the owners to plaintiff had been made through the predecessor of Williams who was, at the time, the agent of defendant in that locality and when Williams said to her that he had Class D stock that was two years old that he could transfer to her, there was nothing to indicate to her that he did not have it or could not transfer it to her.

It is contended further that the usual and ordinary business of a savings and loan association is to sell new stock of its own and not to deal in stock already sold and hence the suggestion of Williams that he had and could sell to plaintiff two years old Class D stock was the suggestion of a course so unusual that the mere suggestion should have put plaintiff upon inquiry and before making the purchase from Williams she should have ascertained that he had authority to transact that form of business before buying from him. The rule of law there stated is well founded but we do not think the facts in this case furnish a basis for its application. Plaintiff knew that Williams represented defendant for the purpose of selling stock issued by it but there is no evidence that she had any knowledge that an agent of defendant could not resell stock that had been turned in by another owner; no evidence that she knew such a transaction was so unusual in the course of the business of a savings and loan association that a general agent would not be authorized to

close a transaction of that kind without first securing special authority to do so. The rule of law sought to be applied here is, as we understand it, based upon the presumption that the proposed act of the agent is so unusual that a man of ordinary prudence, would understand from the nature of the proposal itself that he would not have authority to conclude such a transaction under his general power as an agent. [Friedman & Son v. Kelley, 126 Mo. App. 279, 102 S. W. 1066; Bixler Company v. Riney, 7 S. W. (2d) 396; Pemiscot County Abstract Company v. Duncan, 194 S. W. 299.]

We do not think the evidence in this case is such as to bring plaintiff under that rule as a matter of law. To apply that rule to plaintiff in this case would require evidence showing knowledge on her part of the practice or custom of defendant to not resell stock that had been turned back to the company by the owner.

In Friedman & Son v. Kelley, 126 Mo. App. 279, 102 S. W. 1066, a traveling salesman had agreed with a merchant who purchased ladies cloaks that the purchaser could return by December 10th of that year all or any part of the goods. This was held to be such an unusual and extraordinary agreement that the purchaser was put upon inquiry by the proposal of the salesman, alone; that he could not rely upon the apparent authority of the agent to make such a contract. In discussing the question, after reciting the facts, the court said, page 290: ''Therefore, if the authority which the salesman assumes to exercise in and about the sale of such goods is of such an unusual, improbable and extraordinary character as would be sufficient to place a reasonably prudent business man in dealing with him upon his guard, the parties so dealing will not be justified in disregarding his senses and overlooking the situation and thereafter seek to hold the principal upon the agent's apparent authority.'' On page 281 in stating the question involved, the court said: ''. . . is an extraordinary and unusual agreement when measured by the custom or usage of the trade in which he is engaged and *so known to be by the parties.* (Italics are ours.) The knowledge of the party dealing with the agent is important. If he be engaged in a certain trade or business where it is usual or customary to deal with agents, then he is presumed to be familiar with the custom or usages of the trade or business in which he is engaged and when an agent would propose something beyond the usual and ordinary usage or custom of that trade or business, he would know that the proposition was unusual and would thereby be put upon his guard. This case is different. Here an agent is sent out with general authority to sell stock in defendant company to any and all persons whom he can induce to buy. This agent represented to plaintiff that he had two years old Class D stock in defendant company that had been turned back by the owner and proposed to sell that to

plaintiff. There was nothing to indicate to plaintiff that the agent could not resell stock that had been turned back to the company. To our mind there can be no question but that the company could resell this stock if it desired to do so. Whether or not it would resell it was a question of policy to be determined by defendant, solely; and certainly it cannot be said that plaintiff was chargeable with knowledge of the policy or practice of defendant company in selling stock. If that fact were to be brought home to plaintiff, it was incumbent upon defendant to prove she had such knowledge and there is no evidence tending to prove that fact. The demurrer to the evidence was properly overruled.

The court gave a declaration of law asked by defendant as follows: "The court declares the law to be that if it finds from all the evidence and circumstances in evidence that plaintiff knew or in the exercise of ordinary care on her part should have known that the transaction in question was irregular, unusual and not in the usual and ordinary course of the business of said H. L. Williams as agent for defendant, then plaintiff was put upon notice to ascertain what the actual authority of said Williams was as agent for defendant. By ordinary care, as used in this declaration of law, is meant that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances." The court gave all the declarations of law asked by defendant except a demurrer to plaintiff's evidence. We think the demurrer was properly overruled and the declarations of law given show that the court tried the case on defendant's theory of the law and having found the facts against it, it has no ground for complaint.

The only other question raised is that the judgment is excessive. This is based upon the testimony of plaintiff that in December, 1927, she became suspicious of Williams because he told her to make all payments direct to him and not to others in his office. We do not think that request from him sufficient to indicate to plaintiff that he had exceeded his authority in selling the stock involved in this suit or place upon her the duty to inquire of defendant whether she should continue paying her monthly payments to him.

The judgment will be affirmed. *Bailey* and *Smith, JJ.*, concur.